WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
John K. Cunningham
Thomas E. MacWright
Samuel P. Hershey

111 South Wacker Drive
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (*pro hac vice pending*)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (*pro hac vice pending*)

*Attorneys for Eleanor Fisher,*
*as Petitioner and Foreign Representative*

**Hearing Date:  March 30, 2020**
**Objection Deadline: March 23, 2020**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) |
| | ) |
| | ) Case No. 20 -10712 |
| Olinda Star Ltd., (In Provisional Liquidation)[1] | ) |
| | ) |
| Debtor in a Foreign Proceeding. | )    Chapter 15 |
| | ) |

**PETITIONER'S DECLARATION AND VERIFIED PETITION FOR RECOGNITION**
**OF BVI PROCEEDING AND MOTION REQUESTING ADDITIONAL RELIEF**
**PURSUANT TO 11 U.S.C. §§ 105(A), 1507(A), 1521(A), AND 1525(A)**

---

[1]    The Debtor in this Chapter 15 case, and the last four identifying digits of the tax number of the jurisdiction in which it pays taxes, is Olinda Star Ltd. (In Provisional Liquidation) (BVI – 9761).

Preliminary Statement.................................................................................................2

Background ...............................................................................................................4

I.    Overview of Olinda's Corporate and Capital Structures ...................................4

       A.    Location of Olinda's registered office and records................................4

              1.    Location of Olinda's assets and operations ................................. 5

              2.    Olinda's capital structure and location of its creditors .............. 5

II.   Overview of Olinda's Management and Provisional Liquidation ......................6

              1.    Overview of provisional liquidation proceedings in the BVI.................... 6

              2.    Olinda's "soft-touch" provisional liquidation............................ 8

              3.    Exclusion of Olinda from the RJ Proceeding and Corresponding
                    Shift to BVI-Centered Restructuring ....................................... 10

III.  Expectations of Olinda's Creditors and Their Support for the BVI Proceeding and BVI
      Scheme ...........................................................................................................11

IV.   Overview of the BVI Scheme ......................................................................13

       A.    Overview of schemes of arrangement under BVI law..........................13

              1.    Overview of the process by which the BVI Scheme was approved
                    by creditors and sanctioned by the BVI Court.......................... 14

              2.    The purpose of the BVI Scheme............................................ 18

V.    Connections to the United States ................................................................20

Jurisdiction, Eligibility and Venue ........................................................................20

Basis for Relief .....................................................................................................21

I.    The Petitioner has Satisfied the Requirements for Recognition of the BVI Proceeding .....21

       A.    The Requirements of Section 1517(a) of the Bankruptcy Code are Satisfied .......21

              1.    The BVI Proceeding is a "Foreign Proceeding" ....................... 21

              2.    The Petitioner is the proper Foreign Representative................. 23

## TABLE OF CONTENTS

Page

      3.    The Petition meets the additional requirements of section 1515 and
Bankruptcy Rule 1007(a)(4) ........................................................................ 24

   B.    Olinda's BVI Proceeding Satisfies the Requirements for Recognition as a
"Foreign Main Proceeding" ...................................................................... 25

   C.    In the Alternative, the Court Should Find that Olinda's BVI Proceeding is at
Least a "Foreign Nonmain Proceeding" ................................................... 32

II.   The Court Should Grant the Petitioner's Request for Discretionary Relief Pursuant to
Section 1521, 1507 and 105 of the Bankruptcy Code .......................................... 34

   A.    Applicable Standards ............................................................................ 35

   B.    This Court Should, in the Exercise of Comity, Enforce the BVI Scheme and
the BVI Sanction Order within the Territorial Jurisdiction of the United States
................................................................................................................ 37

   C.    This Court Should Grant a Permanent Injunction Barring Claims Against
Olinda to Prevent Irreparable Harm and Support the Proper Implementation
of the BVI Scheme ................................................................................. 39

   D.    This Court Should Direct the Directed Parties to Take the Required Actions
under the BVI Scheme and BVI Sanction Order .................................... 40

   E.    This Court should Exculpate the Directed Parties and JPLs from Liability in
Connection with the Implementation of the BVI Scheme ...................... 41

III.   Recognition of the BVI Proceedings and Enforcement of the BVI Scheme of
Arrangement Would Not Be Manifestly Contrary to U.S Public Policy ............................ 44

Notice .......................................................................................................................... 45

Conclusion .................................................................................................................. 45

Verification of Chapter 15 Petition ............................................................................ 47

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Ad Hoc Grp. of Vitro Noteholders v. Vitro SAB De CV (In re Vitro S.A.B. de
C.V.), 701 F.3d 1031 (5th Cir. 2012) ...................................................................36

Beveridge v. Vidunas (In re O'Reilly),
598 B.R. 784 (Bankr. W.D. Pa. 2019) ................................................................33

Cunard S.S. Co. v. Salen Reefer Servs. AB,
773 F.2d 452 (2d Cir. 1985).........................................................................39, 43

Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet),
737 F.3d 238 (2d Cir. 2013)................................................................................20

Hertz Corp. v. Friend,
559 U.S. 77 (2010)...............................................................................................28

Hilton v. Guyot,
159 U.S. 113 (1895).............................................................................................37

In re Artimm, S.r.L.,
335 B.R. 149 (Bankr. C.D. Cal. 2005)...............................................................35

In re Atlas Shipping A/S,
404 B.R. 726 (Bankr. S.D.N.Y. 2009)..........................................................35, 36

In re Avanti Commc'ns Grp. PLC,
582 B.R. 603 (Bankr. S.D.N.Y. 2018)........................................................ passim

In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.,
238 B.R. 25 (Bankr. S.D.N.Y. 1999)..................................................................23

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,
389 B.R. 325 (S.D.N.Y. 2008).............................................................................25

In re Betcorp Ltd.,
400 B.R. 266 (Bankr. D. Nev. 2009) .............................................................25, 27

In re British Am. Isle of Venice, Ltd.,
441 B.R. 713 (Bankr. S.D. Fla. 2010) ................................................................28

In re Cell C Proprietary Ltd.,
571 B.R. 542 (Bankr. S.D.N.Y. 2017).................................................................37

In re CGG S.A,
No. 17-11636 (Bankr. S.D.N.Y. Dec. 21, 2017)..................................................42

## TABLE OF AUTHORITIES

Page(s)

*In re Creative Fin., Ltd. (In Liquidation)*,
   543 B.R. 498 (Bankr. S.D.N.Y. 2016)................................................................32, 33

*In re DBSD N. Am., Inc.*,
   419 B.R. 179 (Bankr. S.D.N.Y. 2009)....................................................................42

*In re Fairfield Sentry Ltd.*,
   No. 10 Civ. 7311 (GBD), 2011 U.S. Dist. LEXIS 105770
   (S.D.N.Y. Sept. 15, 2011)................................................................................23, 27

*In re Highlands Ins. Co. (U.K.) Ltd.*,
   No. 07-13970, 2009 Bankr. LEXIS 5744 (Bankr. S.D.N.Y. Aug. 18, 2009)...................37, 39

*In re Inversora Eléctrica de Buenos Aires S.A.*,
   560 B.R. 650 (Bankr. S.D.N.Y. 2016)................................................................21, 41

*In re LDK Solar Co.*,
   No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014)..........................................23

*In re Lloyd*,
   No. 05-60100, 2005 Bankr. LEXIS 2794 (Bankr. S.D.N.Y. Dec. 7, 2005)...........................23

*In re Lupatech S.A.*,
   No. 16-11078 (MG) (Bankr. S.D.N.Y. 2016)......................................................41

*In re Metcalfe & Mansfield Alt. Invs.*,
   421 B.R. 685 (Bankr. S.D.N.Y. 2010)..................................................................43

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
   458 B.R. 63 (Bankr. S.D.N.Y. 2011)............................................................32, 33, 34

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
   474 B.R. 88 (S.D.N.Y. 2012)..........................................................................27, 33

*In re Ocean Rig UDW Inc.*,
   570 B.R. 687 (Bankr. S.D.N.Y. 2017)........................................................... passim

*In re Oi Brasil Holdings Cooperatief U.A.*,
   578 B.R. 169 (Bankr. S.D.N.Y. 2017)....................................................................26

*In re Oi S.A.*,
   No. 16-11791, 2018 Bankr. LEXIS 2053 (Bankr. S.D.N.Y. July 9, 2018) .......................36, 43

*In re PT Berlian Laju Tanker TBK*,
   No. 13-10901 (SMB) (Bankr. S.D.N.Y. Jan. 8, 2015)............................................43

## TABLE OF AUTHORITIES

Page(s)

*In re PT Bumi Res. TBK*,
    No. 17-10115 (MKV) (Bankr. S.D.N.Y. Mar. 17, 2017) ......................................................43

*In re Serviços de Petróleo Constellation S.A.*,
    600 B.R. 237 (Bankr. S.D.N.Y. 2019)............................................................................ passim

*In re Sino-Forest Corp.*,
    501 B.R. 655 (Bankr. S.D.N.Y. 2013).......................................................................36, 43, 44

*In re SPhinX, LTD.*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006).................................................................26, 28, 31, 35

*In re Suntech Power Holdings Co.*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014).............................................................................22, 27

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011)..................................................................................44

*In re Tokio Marine Eur. Ins. Ltd.*,
    No. 11-13420, 2011 Bankr. LEXIS 5805 (Bankr. S.D.N.Y. Sept. 8, 2011).....................37, 39

*In re Winsway Enters. Holdings Ltd.*,
    No. 16-10833 (MG) (Bankr. S.D.N.Y. June 16, 2016)...........................................................39

*Lavie v. Ran (In re Ran)*,
    607 F.3d 1017 (5th Cir. 2010) .......................................................................................26, 33

*MF Glob. Holdings Ltd. v. Allied World Assurance Co. (In re MF Glob. Holdings
    Ltd.)*, 562 B.R. 55 (Bankr. S.D.N.Y. 2017) ..........................................................................39

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
    714 F.3d 127 (2d Cir. 2013)......................................................................25, 26, 27, 28

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987)..................................................................................................37

## STATUTES AND OTHER AUTHORITY

11 U.S.C. § 101................................................................................................................ passim

11 U.S.C. § 105...........................................................................................................1, 34, 34

11 U.S.C. § 109...............................................................................................................20, 21

11 U.S.C. § 1501.....................................................................................................................44

11 U.S.C. § 1502............................................................................................1, 21, 25, 32

v

# TABLE OF AUTHORITIES

Page(s)

11 U.S.C. § 1504 ........................................................................................20, 23, 25

11 U.S.C. § 1506 ................................................................................................21, 44

11 U.S.C. § 1507 .................................................................................................. passim

11 U.S.C. § 1508 ........................................................................................................44

11 U.S.C. § 1509 ................................................................................................20, 25

11 U.S.C. § 1515 ............................................................................21, 23, 24, 25

11 U.S.C. § 1516 ........................................................................................................25

11 U.S.C. § 1517 .................................................................................................. passim

11 U.S.C. § 1520 ..........................................................................................................1

11 U.S.C. § 1521 .................................................................................................. passim

11 U.S.C. § 1522 ........................................................................................................35

28 U.S.C. § 157 ........................................................................................................20

28 U.S.C. § 1334 ......................................................................................................20

28 U.S.C. § 1408 ......................................................................................................20

28 U.S.C. § 1410 ................................................................................................20, 21

BVI Insolvency Act, 2003 § 170 ................................................................1, 47

## OTHER AUTHORITIES

H. Rep. No. 109-31, pt. 1 (2005) ......................................................................25, 35

I, Eleanor Fisher (the "**Petitioner**" or the "**Foreign Representative**"), in my capacity as the duly-authorized foreign representative of the provisional liquidation proceeding (the "**BVI Proceeding**") of Olinda Star Ltd. ("**Olinda**" or the "**Debtor**") pending in the BVI Commercial Court (the "**BVI Court**") pursuant to section 170 of the BVI Insolvency Act, 2003 (the "**Insolvency Act**") of the laws of the British Virgin Islands (the "**BVI**"), by and through my undersigned counsel, respectfully submit this Declaration[2] and Verified Petition (the "**Verified Petition**")[3] in furtherance of the form of voluntary petition [ECF No. 1] (the "**Form of Voluntary Petition**") filed concurrently herewith, and hereby request that the Court enter an order substantially in the form annexed hereto as Exhibit A (the "**Proposed Order**") (i) granting recognition of the BVI Proceeding pursuant to section 1517 of title 11 of the United States Code (the "**Bankruptcy Code**") as the "foreign main proceeding" (as defined in section 1502(4) of the Bankruptcy Code) of the Debtor, and all relief included therewith as provided in section 1520 of the Bankruptcy Code;[4] (ii) recognizing the Petitioner as the "foreign representative" (as defined in section 101(24) of the Bankruptcy Code) of the BVI Proceeding; (iii) granting full force and effect and comity to the BVI Scheme (defined below) and the additional relief set forth herein pursuant to section 1521(a) or 1507(a) of the Bankruptcy Code; and (iv) granting such other and further relief as the Court deems just and proper.

---

[2]    The Petitioner submits this Declaration in support of the Verified Petition. The Petitioner's verification with respect to the factual contents of this Verified Petition, as well as the factual contents of each of the attachments and appendices thereto, is set forth below in the section titled "Verification of Chapter 15 Petition."

[3]    Except as otherwise stated herein, "Ex." shall refer to exhibits to this Verified Petition.

[4]    Alternatively, as discussed herein, the Petitioner respectfully requests that the Court recognize such proceeding as a foreign nonmain proceeding (as defined in section 1502(5) of the Bankruptcy Code) of the Debtor, and grant the discretionary relief requested herein pursuant to sections 1521(a), 1507(a) and 105(a) of the Bankruptcy Code.

In support of this request, the Petitioner relies upon and incorporates by reference:  (i) the *Declaration of Grant Carroll Pursuant to 28 U.S.C. § 1746* (the "**BVI Counsel Declaration**") filed concurrently herewith, along with the exhibits thereto,[5] and (ii) the *Omnibus Motion of the Foreign Representative for Entry of an Order (I) Approving the Withdrawal by the Foreign Representative of the Verified Petition for Recognition of the Brazilian RJ Proceeding as to Olinda Star Ltd. (In Provisional Liquidation) [ECF No. 7] and Dismissal of its Chapter 15 Case, and (II) Granting the Foreign Representative's Renewed Request for Recognition of the Brazilian RJ Proceeding as to Arazi S.à.r.l. Pursuant to 11 U.S.C. §§ 1515, 1517 and 1520 and Giving Full Force and Effect to the Brazilian Reorganization Plan as to Arazi S.à.r.l. Pursuant to 11 U.S.C. §§ 105(a), 1507(a), 1145, 1521(a) and 1525(a)*, filed by Andrew Childe as foreign representative in related case number 18-13952 (MG) (the "**Omnibus Motion**").   In further support of this Verified Petition, the Petitioner respectfully represents to the Court as follows:

## PRELIMINARY STATEMENT

As the Court is aware, certain entities within the Constellation group of companies (the "**Constellation Group**") are the subject of a Brazilian *recuperação judicial* reorganization proceeding in Brazil (the "**RJ Proceeding**") and a related chapter 15 proceeding before this Court (the "**First Ch. 15 Proceeding**").[6]  On December 6, 2018, Olinda, along with certain of its affiliates, filed as a debtor in the RJ Proceeding and the First Ch. 15 Proceeding.  On the same day, Olinda also commenced the BVI Proceeding, seeking the appointment of provisional liquidators (the "**JPLs**").  The JPLs were appointed to Olinda on December 19, 2018, following a hearing.[7]

---

[5]     Exhibits to the BVI Counsel Declaration shall be referred to herein as "BVI Counsel Decl. Ex."

[6]     *See In re Serviços de Petróleo Constellation S.A.,* No. 18-13952 (MG) (Bankr. S.D.N.Y. Dec. 6, 2018) (hereinafter referred to as "**In re SPC**").

[7]     *See* BVI Counsel Decl. Ex. B.

In June 2019 the Brazilian Court of Appeals upheld a decision to remove Olinda from the RJ Proceeding for lack of jurisdiction.[8]  Due to Olinda's exclusion from the Brazilian RJ Proceeding, this Court did not grant recognition to Olinda in the First Ch. 15 Proceeding.[9] Accordingly, Olinda's restructuring had to change course.[10]

After lengthy negotiations, on August 5, 2019, Olinda, the JPLs, certain consenting 2024 Noteholders (as defined below) and certain other parties (the "**PSA Parties**") to the Constellation Group's plan support agreement dated as of June 28, 2019 (as amended and restated from time to time, the "**PSA**"), entered into a term sheet (the "**Olinda Term Sheet**")[11] governing a parallel restructuring of Olinda's guarantee obligations in the BVI.  The Olinda Term Sheet permitted the transactions contemplated by the RJ Plan (as defined below) to close without a restructuring of Olinda, provided that Olinda's guarantee obligations were modified under BVI law in the BVI Proceeding.[12]

As of December 18, 2019, the Constellation Group's approximately $1.5 billion of prepetition debt has been substantially restructured pursuant to the Group's Brazilian reorganization plan (the "**RJ Plan**").  On February 25, 2020, following a meeting of Olinda's

---

[8]    On June 25, 2019, Olinda appealed this decision to the Brazilian Superior Court of Justice, which the Constellation Group was advised typically takes years to issue a decision. *In re SPC* [ECF No. 79] ¶ 69; *see also* [ECF No. 99].

[9]    *See In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 245-46 (Bankr. S.D.N.Y. 2019) ("**Constellation Recognition Decision**") ("[U]ntil the Brazilian Courts determine whether the Chapter 15 Debtors Arazi and Olinda Star are proper parties in the Brazilian RJ Proceeding, this Court will not decide whether the proceedings are main or nonmain with respect to them."); *In re SPC* [ECF No. 192] ("**Chapter 15 Enforcement Order**"), at 11 ("For the avoidance of doubt, the relief granted in this Order does not apply to Arazi, Olinda Star or with respect to any RJ Debtors that are not Applicable Chapter 15 Debtors.").

[10]   On December 5, 2019 this Court granted full force and effect to the RJ Plan with respect to the Applicable Chapter 15 Debtors, which facilitated the closing of the transactions contemplated therein on December 17, 2019.  *See In re SPC* [ECF Nos. 192, 194].

[11]   A copy of the Olinda Term Sheet is attached to the BVI Sanction Order (BVI Counsel Decl. Ex. J).

[12]   The Olinda Term Sheet originally contemplated that Olinda would enter into a BVI law plan of arrangement. However, the Constellation Group's settlement with PIMCO enabled Olinda to pursue a BVI law scheme of arrangement, which Olinda, its JPLs and the PSA Parties have elected to pursue instead.

3

scheme creditors (the "**Scheme Meeting**"), and upon notice and a hearing, the BVI Court approved Olinda's BVI law scheme of arrangement (the "**BVI Scheme**") pursuant to the BVI Business Companies Act, 2004, restructuring the existing guarantee granted by Olinda (the "**Prior 2024 Notes Guarantee**") in favor of holders (the "**2024 Noteholders**") of certain 9.00% Cash /0.500% PIK senior secured notes due 2024 (the "**Prior 2024 Notes**") and allowing Olinda to accede as a guarantor of restructured 2024 Notes (the "**Restructured 2024 Notes**") as contemplated under the RJ Plan.

Aside from the relief requested in the Omnibus Motion, only one step remains in consummating the Constellation Group's global restructuring. Because the Prior 2024 Notes Guarantee is governed by New York law, a prerequisite to the effectiveness of the BVI Scheme is that this Court grant it comity. The Petitioner, an officer of the BVI Court, has therefore been authorized and directed by the BVI Court to seek the relief requested herein, with the goal of finalizing the implementation of the BVI Scheme.

Thus, for the reasons set forth herein and in the Omnibus Motion, the Petitioner requests that this Court (i) recognize Olinda's BVI Proceeding as a foreign main proceeding or, alternatively, a foreign nonmain proceeding; (ii) recognize the Petitioner as the "foreign representative" of the BVI Proceeding; (iii) grant full force and effect and comity to the BVI Scheme; and (iv) grant such other relief as the Court deems just and proper.

## BACKGROUND

I. **OVERVIEW OF OLINDA'S CORPORATE AND CAPITAL STRUCTURES**

A. **Location of Olinda's registered office and records**

1.      Olinda (formerly Tessone Ventures S.A.) was incorporated in the BVI on September 7, 2006 and registered as a Business Company under the laws of the BVI. BVI Counsel Decl. ¶ 12 n. 1; BVI Counsel Decl. Ex. A. Olinda maintains its registered office at Tortola Pier

Park, Building 1, Second Floor, Wickhams Cay 1, Road Town, Tortola VG1110 in the BVI, *id.*, and its statutory books and records are held in Panama, together with the statutory books and records of certain other Constellation Group entities, by its registered agent at Torre BiC SA Financial Center, Avenida Balboa y Calle Aquilino de la Guardia, Piso 40, officina 4003, Panama. Olinda's membership interests are also located in the BVI. BVI Counsel Decl. ¶ 12 n.1.

### 1.   Location of Olinda's assets and operations

2.      Olinda is a special purpose vehicle that conducts its business principally on the high seas. Its primary asset, the *Olinda Star* drilling rig, is presently completing a contract for a large international oil and gas company in the Indian Ocean. Olinda also has a client trust account at White & Case LLP, in New York, with a balance of $1,000.67 (the "**Escrow Account**").

### 2.   Olinda's capital structure and location of its creditors

3.      As set forth above, Olinda is a guarantor and grantor of the 2024 Notes, issued by its indirect parent company, Constellation Oil Services Holding S.A ("**Constellation Parent**"). As of February 6, 2020, the Petitioner came to understand that an aggregate principal amount of $608,455,375 was outstanding under the then-existing 2024 Notes (the "**Prior 2024 Notes**") pursuant to a New York law-governed indenture (the "**Prior 2024 Notes Indenture**"). The Prior 2024 Notes have been restructured pursuant to the RJ Plan,[13] but the Prior 2024 Notes Guarantee remains in place until the BVI Scheme is consummated. The indenture trustee of the Restructured

---

[13]      Holders of the Prior 2024 Notes were offered the opportunity to participate in a rights offering (the "**Rights Offering**"). The Rights Offering was a resounding success with 92% of the 2024 Noteholders electing to participate and thereby funding a $27 million new money contribution to the Constellation Group. Those holders that participated in the rights offering (the "**Participating 2024 Noteholders**") were issued new notes pursuant to two new indentures (the "**Participating 2024 Notes Indenture**") and the ("**Stub 2024 Notes Indenture**"). The Participating 2024 Noteholders retained their existing collateral in addition to receiving an enhanced collateral package granted by certain of Olinda's affiliates. Holders of the Prior 2024 Notes who did not elect to participate in the Rights Offering retained only their existing prepetition collateral and received new notes under a new indenture (the "**Non-Participating Notes Indenture**" and, together with the Participating 2024 Notes Indenture and Stub 2024 Notes Indenture, the "**New Indentures**").

5

2024 Notes is located in New York and upon information and belief, the participants comprise

investment funds and individuals incorporated in various jurisdictions around the world.

4.       To secure the Prior 2024 Notes, Olinda granted security over certain collateral,

including a mortgage over its drilling rig, the *Olinda Star*.  Olinda also granted an assignment of

insurance policies and pledges on related accounts.  Certain of Olinda's affiliates were also

guarantors and grantors in respect of the Prior 2024 Notes and are now guarantors and grantors in

respect of the Restructured 2024 Notes.  The full capital structure of the Constellation Group prior

to its restructuring in the RJ Proceeding is set forth in more detail in the decision of this Court

granting recognition to certain of the debtors in the First Ch. 15 Proceeding.  *See* Constellation

Recognition Decision at 254-57.

## II.    OVERVIEW OF OLINDA'S MANAGEMENT AND PROVISIONAL LIQUIDATION

5.       Olinda's operational management team is based in Brazil,[14] its treasury function is

located in Panama, and its sole director resides in the Cayman Islands.  However, for more than a

year,[15] the BVI Court-appointed JPLs have actively overseen and implemented its restructuring.

### 1.    Overview of provisional liquidation proceedings in the BVI

6.       The BVI is an Overseas Territory of the United Kingdom.  BVI Counsel Decl. ¶ 9.

The legal system of the BVI is an English-style common-law system based upon the doctrine of

precedent.  *Id.*  The Common Law (Declaration of Application) Act (Cap 13) extends the common

law of England to the BVI.  *Id.*  Equitable principles of English jurisprudence also apply in the

---

[14]       The Constellation Group's shared operational management team is responsible for Olinda's and its affiliates' financial, legal and investor relations services and operational coordination activities.  Constellation Recognition Decision at 287.

[15]       *See In re SPC* [ECF Nos. 21, 31] (notices informing chapter 15 court of application for and appointment of JPLs to BVI-incorporated chapter 15 debtors, including Olinda).

BVI.  BVI Counsel Decl.  *Id.*  It follows that the common law of the BVI is largely identical to
that of England (except insofar as modified by statute, or BVI jurisprudence).  *Id.*

7.      There is no process or procedure under BVI law which is directly equivalent to
Chapter 11 of the United States Bankruptcy Code.  *Id.* ¶ 17.  In the BVI, a company that requires
the protection of a stay in order to present a compromise or arrangement to its creditors must seek
the appointment of a provisional liquidator.  *Id.*  Provisional liquidators are officers of the BVI
Court and occupy a fiduciary position with respect to the company's assets and creditors.  Their
function is to represent the collective interests of the creditors of the company and protect its assets
from undue dissipation.

8.      In a "soft-touch" BVI provisional liquidation, such as Olinda's, the directors
typically retain day-to-day control of the company but the provisional liquidators are kept apprised
of the actions taken by directors in the ordinary course of business.  *Id.* ¶ 21.  However, corporate
authority to pursue a course of action that is outside the ordinary course of business (such as
proposing entry into a scheme of arrangement to creditors) rests with the provisional liquidator(s).
*Id.*

9.      Provisional liquidation is a BVI Court-originated and supervised process.  *Id.* ¶ 26.
As described above, the process is commenced by an application to the BVI Court.  *Id.*  After an
initial sixth month period, if the JPLs' appointment is to continue, an application must be made to
the BVI Court every three months to extend the life of the "originating application" (which
commenced the BVI Proceeding).  *Id.*  In this case, the BVI Court also required that the provisional
liquidators submit reports on the status of the proceeding every 60 days.  *Id.*  Moreover, the
provisional liquidators may exercise only their BVI Court-conferred powers.  *Id.* ¶ 27.  Various
actions by a provisional liquidator that are outside the scope of their appointment order require the

express prior approval of the BVI Court. *Id.* This includes the power to make a compromise or arrangement with creditors (such as via a scheme of arrangement). *Id.*

### 2. Olinda's "soft-touch" provisional liquidation

10.    As set forth in more detail in the BVI Counsel Declaration, on December 6, 2018 Olinda filed an application under the Insolvency Act for the appointment of provisional liquidators. *Id.* ¶ 19. On December 19, 2018, following a hearing, the BVI Court appointed the Petitioner and Mr. Paul Pretlove as JPLs. *Id.*

11.    Mr. Pretlove resides in the BVI and the Petitioner resides in the Cayman Islands. They are both officers of the BVI Court and their authority to act on behalf of Olinda is derived solely from the BVI Court's orders. *Id.* ¶ 20. Due to the Insolvency Act's residency requirements, the Petitioner's ability to serve as provisional liquidator of Olinda is contingent upon the ongoing appointment of BVI-resident provisional liquidator, Mr. Pretlove, with whom she exercises joint and several authority and is in regular contact. *Id.* ¶ 18.

12.    The JPLs have been conducting the provisional liquidation of Olinda in a "soft-touch" manner, with a view to implementing the successful reorganization of Olinda. The core powers conferred on the JPLs by the BVI Court (set forth in detail in their appointment order) are to oversee the exercise of power of the sole director outside the ordinary course of business, and ultimately implement the restructuring. *Id.* ¶ 22; BVI Counsel Decl. Ex. B.

13.    Pursuant to a separate order dated December 20, 2019, the BVI Court has also authorized the Petitioner to act as foreign representative for the purposes of any proceedings commenced in the United States under chapter 15 of the U.S. Bankruptcy Code and elsewhere under the relevant local laws. BVI Counsel Decl. ¶ 23; BVI Counsel Decl. Ex. D.

14.     The JPLs have conducted the BVI Proceeding pursuant to a BVI Court-approved

Insolvency Protocol.  BVI Counsel Decl. ¶ 24; BVI Counsel Decl. Ex. E (as amended, the "**BVI**

**Insolvency Protocol**").  The purpose of the BVI Insolvency Protocol is to ensure the just, efficient,

orderly and expeditious administration of the provisional liquidation.  BVI Counsel Decl. ¶ 25.  It

also facilitates communication between management and the JPLs to ensure that the JPLs receive

adequate information to discharge their duties.  *Id.*  The BVI Insolvency Protocol requires that

Olinda's sole director, management and advisors provide regular information and updates to the

JPLs and provide the JPLs with such information as is reasonably requested by the JPLs.  *Id.*  The

JPLs are also entitled to receive and comment on drafts of written resolutions of Olinda, and to be

included in any board meetings.  *Id.*

15.     Over the course of their appointment, the JPLs have actively exercised the authority

conferred upon them by the BVI Court.  Specifically, since their appointment in December 2018,

the JPLs have:

i)      directed that notices of their appointment be placed in the BVI Gazette and
        on the Constellation Group's website, inviting creditors of Olinda to
        correspond with them using their BVI contact details;

ii)     retained BVI counsel from whom they have regularly sought advice;

iii)    participated in regular conference calls with Olinda's sole director, its
        management team, treasury department and advisors;

iv)     regularly requested and reviewed documents, updates and information
        from the Constellation Group's management, treasury department and
        counsel concerning both Olinda and the broader Constellation Group's
        affairs, proceedings and restructuring process;

v)      reviewed and commented on (A) Olinda's draft board resolutions,
        (B) proposed filings in Olinda's BVI and U.S. court proceedings, and
        (C) all notices and documents prepared in connection with the BVI
        Scheme;

vi)     supported five applications in the BVI Court for the renewal of the
        originating application that sustains their appointment;

9

vii)   filed five status reports with the BVI Court, pursuant to their duty to
update the BVI Court on the status of the BVI Proceeding;

viii)  following Olinda's exclusion from the RJ Proceeding, oversee and
participated, via counsel, in negotiations between Olinda and the PSA
Parties to facilitate Olinda's BVI restructuring process;

ix)    considered, reviewed, commented on, and ultimately authorized Olinda to
enter into the Olinda Term Sheet, following an extensive consultation
process with their advisors and Olinda's sole director;

x)     considered, reviewed and commented on the BVI Scheme, and after
determining that the BVI Scheme was in the interests of creditors,
authorized Olinda to put the BVI Scheme forward to creditors;

xi)    engaged with Olinda's creditors concerning the BVI Scheme, including
overseeing the dissemination of notices, proxy forms, the BVI Scheme and
related documents to scheme creditors, and responding to questions and
requests for documents from scheme creditors;

xii)   caused Olinda to request that the BVI Court convene a meeting of
creditors to approve the BVI Scheme;

xiii)  chaired the meeting of creditors necessary for the approval of the BVI
Scheme, reviewed and tallied proxy forms, and determined that the
scheme creditors approved the BVI Scheme by the requisite number of
votes; and

xiv)   caused Olinda to seek BVI Court approval of the BVI Scheme and
provided evidence in connection with those hearings.

**3.    Exclusion of Olinda from the RJ Proceeding and Corresponding Shift
to BVI-Centered Restructuring**

16.    More than a year ago, when the First Ch. 15 Proceeding was commenced, the JPLs

supported Olinda's initial attempts to restructure through the Brazilian RJ Proceeding and further

supported a finding of COMI in Brazil.[16]   However, following the Brazilian Court of Appeals'

---

[16]    *See* Constellation Recognition Decision at 254 ("It is the understanding of the BVI JPLs that Brazil is the
*principal estabelecimento* or 'principal place of business' of the Chapter 15 Debtors' group for purposes of
Brazilian law, and that Brazil is the 'centre of main interests' or 'COMI' of each of the BVI Debtors for the
purposes of U.S. restructuring law."); *see also id.* at 263 ("The JPLs have been appointed with respect to
each of Lone Star, Gold Star, Olinda Star, and Alpha Star, and function to protect the interests of the collective
creditors of each. They have expressed support for the Brazilian RJ Proceeding and for a finding of COMI
in Brazil for each of these BVI Debtors.") (internal citations omitted).

decision to uphold the exclusion of Olinda from the RJ Proceeding, the JPLs concluded that the only practical course of action for the efficient restructuring of Olinda's Prior 2024 Notes Guarantee would be through a BVI plan or scheme of arrangement. This conclusion was re-enforced by the advice from Brazilian counsel retained by the Constellation Group that the resolution of any appeal to the Superior Court of Justice of Brazil on the issue of Olinda's exclusion from the RJ Proceeding could take years to be decided.

17.     As a result of this change in course, the JPLs took the following steps in aid of the efficient restructuring of Olinda. *Supra* ¶ 15(ix)-(xv). The JPLs participated in negotiations with the PSA Parties and their advisors to facilitate Olinda's restructuring in the BVI. *Supra* ¶ 15(ix). In connection therewith, the JPLs considered, reviewed and commented on the Olinda Term Sheet and BVI Scheme, and authorized Olinda to enter into the Olinda Term Sheet and put forward the BVI Scheme to its creditors. *Supra* ¶¶ 15(x)-(xi). The Petitioner engaged with creditors in respect of the BVI Scheme, including by serving as a point of contact for questions and overseeing the dissemination of scheme materials. *Supra* ¶ 15(xii). The Petitioner also caused Olinda to request the convening of the Scheme Meeting, chaired that meeting, and caused Olinda to seek approval of the BVI Scheme from the BVI Court. *Supra* ¶¶ 15(xiii)-(xiv). These steps were not contemplated at the time of the JPLs' initial appointment in December 2018, but were rather undertaken in connection with the shift to restructuring Olinda through a BVI-centered process. Accordingly, the JPLs now support the restructuring of Olinda's Prior 2024 Notes Guarantee through the BVI Scheme, and further support a finding of COMI in the BVI.

## III.    EXPECTATIONS OF OLINDA'S CREDITORS AND THEIR SUPPORT FOR THE BVI PROCEEDING AND BVI SCHEME

18.     As this Court has found, the exchange offering documentation made clear that several entities within the Constellation Group were incorporated in and subject to the laws of the

11

BVI and that noteholders could have reasonably foreseen BVI proceedings affecting the Constellation Group's BVI-incorporated debtors. *In re SPC*, 600 B.R. at 284.[17]  In line with this finding, following the exclusion of Olinda from the Brazilian RJ Proceeding, the ad hoc group of 2024 Noteholders that had entered into the PSA (the "**Consenting 2024 Noteholders**"), along with the other PSA Parties conferred with Olinda and its affiliates as to how best to restructure the Prior 2024 Notes Guarantee in the BVI.  The JPLs participated in this negotiation process through counsel.

19.    On August 5, 2019, following negotiations, Olinda and certain of the PSA Parties, including the Consenting 2024 Noteholders, entered into the Olinda Term Sheet, which provided for the restructuring of Olinda in the BVI.  The offering memorandum issued on July 17, 2019 in connection with a rights offering for certain of the Restructured 2024 Notes (the "**Rights Offering Memorandum**"),[18] further confirmed that Olinda was subject to provisional liquidation in the BVI and intended to restructure its guarantee in the BVI.  Ex. 1 at 5, 103 ("Olinda Star intends to restructure its indebtedness in a way that mirrors the RJ Proceedings (to the extent possible) by way of a restructuring process that is permissible under BVI law.  Olinda Star remains in provisional liquidation and the joint provisional liquidators appointed on December 19, 2018 by the BVI court remain in place.").  Furthermore, the New Indentures[19] expressly include the

---

[17]    On December 7, 2018 certain consenting lenders (the "**A/L/B Lenders**"), that are party to a secured syndicated project finance credit facility to finance three of Olinda's affiliate drillships (the "**A/L/B Project Financings**"), filed a statement to the effect that they had always historically operated under the assumption that the COMI of each of the debtors in the First Ch. 15 Proceeding was and remained in Brazil.  *In re SPC* (Bankr. S.D.N.Y. Dec. 7, 2018) [ECF No. 8], at 3.  They also expressed their support for a finding of COMI in Brazil.  *Id.*  However, Olinda was neither a party nor an obligor with respect to the A/L/B Project Financings.  The A/L/B Lenders in their capacity as a party to the PSA, are also party to the Olinda Term Sheet.

[18]    Attached hereto as Exhibit 1 is a copy of the Rights Offering Memorandum.

[19]    Attached hereto as Exhibit 2 are relevant excerpts from the Participating Notes Indenture.

insolvency laws of the BVI in definitions of bankruptcy laws, so noteholders would have been on notice that an insolvency proceeding of Olinda could be centralized in the BVI. Ex. 2.

20.     Thus, from at least mid-2019, the PSA Parties, including the majority of Olinda's scheme creditors, have expected that the Prior 2024 Notes Guarantee will be restructured in the BVI. To that end, the PSA Parties, including the Consenting 2024 Noteholders and their U.S. and BVI counsel, have been in regular contact with the JPLs and their advisors concerning the implementation of the Olinda Term Sheet. The JPLs, along with their U.S. and BVI counsel, have prepared for the meeting of Olinda's scheme creditors and responded to queries from those creditors in the months leading up to the meeting. The Petitioner, in her capacity as JPL, served as the point of contact for creditor inquiries and chaired the scheme meeting. The BVI Scheme received overwhelming support from the scheme creditors and was approved by 100% of scheme creditors present and voting, which represented scheme creditors holding in aggregate 82.99% of value. BVI Counsel Decl. Ex. H.

## IV.     OVERVIEW OF THE BVI SCHEME

### A.     Overview of schemes of arrangement under BVI law

21.     A scheme of arrangement is a statutory, court-supervised arrangement between a company and its creditors. BVI Counsel Decl. ¶ 33. It is a collective procedure as a duly-approved scheme becomes binding on all creditors, whether or not they (a) attended the meeting, (b) voted at the meeting, or (c) voted against the scheme. *Id.* The statutory framework for a BVI law scheme of arrangement was derived from, and remains substantially similar to procedures existing under, English law. *Id.*

22.     Olinda's creditors have, by 100% of scheme creditors present and voting (and by 82.99% of total value), approved entry by Olinda into the BVI Scheme. BVI Counsel Decl. Ex.

H.  The BVI Court has sanctioned (*i.e.*, "approved") that Scheme.  BVI Counsel Decl. ¶¶ 40, 42;

BVI Counsel Decl. Ex. J (the "**BVI Sanction Order**").  All that remains for the BVI Scheme to

become effective is for this Court to grant the relief requested herein, upon which the JPLs cause

the BVI Scheme to be filed with the BVI Registrar of Companies (the "**BVI Registrar**").  BVI

Counsel Decl. ¶ 43.  The BVI Scheme will become effective as soon as it is filed with the BVI

Registrar.  *Id.*

### 1.    Overview of the process by which the BVI Scheme was approved by creditors and sanctioned by the BVI Court

23.    The process for approval of a BVI scheme of arrangement commences when the

debtor company, through its directors, passes a resolution to enter into a scheme of arrangement

with its creditors.  *Id.* ¶ 34.  Where, as here, the company is in provisional liquidation such a

resolution requires the prior approval of the provisional liquidators.  *Id.*  In considering whether to

allow a scheme to proceed, the provisional liquidators will consider whether the scheme secures a

better return for the company's creditors than they would otherwise receive in a liquidation.  *Id.*

If satisfied, the provisional liquidators will authorize the company to begin the process of

approving and implementing the scheme, subject to the provisional liquidators' oversight and

ultimate control.  *Id.*

24.    Here, as set forth above, the JPLs were instrumental in overseeing the negotiation

and documentation of the BVI Scheme, pursuant to their duties as representatives of the collective

interests of Olinda's creditors.  Indeed, the Olinda Term Sheet required that the arrangement to

restructure Olinda's debts be in form and substance reasonably satisfactory to the JPLs.  BVI

Counsel Decl. Ex. J at 136.  On December 13, 2019, the JPLs, having concluded that entry into

the BVI Scheme was in the interests of Olinda's creditors, authorized Olinda's sole director to pass

14

the resolution necessary to commence the approval process for the BVI Scheme, and counter-signed that resolution.  BVI Counsel Decl. ¶ 34; BVI Counsel Decl. Ex. G.

25.     Next, with prior approval of the provisional liquidators, an application must be made to the BVI Court to request that the Scheme Meeting be convened (the "**Convening Hearing**").  BVI Counsel Decl. ¶ 35.  At the Convening Hearing, the BVI Court sets the date, time and location of the Scheme Meeting and proscribes the notice procedures to be followed.  *Id.*  Here, on December 13, 2019, Olinda, pursuant to the authorization of the JPLs, applied to the BVI Court and requested that the Convening Hearing be scheduled.  *Id.*  On December 20, 2019, the BVI Court issued an order on the papers (the "**Convening Order**") scheduling the Scheme Meeting for January 14, 2020.  *Id.*; BVI Counsel Decl. Ex. D.  The Convening Order also provided that creditors must receive copies of the notice convening the Scheme Meeting and the BVI Scheme (together, the "**Scheme Documents**") at least 14 days prior to the Scheme Meeting.  BVI Counsel Decl. ¶ 35; BVI Counsel Decl. Ex. D.  A copy of the notice convening the Scheme Meeting is attached hereto as Exhibit 3.

26.     Pursuant to the Convening Order, the Petitioner directed the posting of advertisements of the Scheme Meeting on the Constellation Group's website and distribution of the same to Olinda's scheme creditors.  BVI Counsel Decl.  ¶¶ 36-37, 39.  The Petitioner directed that copies of the Scheme Documents be provided to the Depository Trust Company ("**DTC**") for distribution to Olinda's creditors.  The Scheme Documents were sent to DTC on December 27, 2019 and made available to scheme creditors through DTC's legal notice system on January 2, 2020.  BVI Counsel Decl. Ex. H ¶¶ 15-18.  Further, on December 31, 2019, a copy of the Scheme Documents were posted on the restricted section of the Constellation Group's website (which would only have been accessible to its creditors), and on January 7, 2020, the Scheme Documents

15

were posted on a publicly available section of the Constellation Group's website.  BVI Counsel
Decl. Ex. H ¶ 15.  This is the same website where documents were posted in connection with the
Brazilian RJ Proceeding and therefore known to creditors of the Constellation Group.

27.    The BVI Court also appoints a person to chair the Scheme Meeting and fairly
implement the scheme, if approved (the "**Scheme Administrator**").  BVI Counsel Decl.  ¶ 37.  In
this instance, the BVI Court appointed the Petitioner as Scheme Administrator, thereby extending
the scope of the Petitioner's fiduciary duties to include oversight of the implementation of the BVI
Scheme.  *Id.*

28.    On January 14, 2020, the Petitioner, in her capacity as JPL and chair of the Scheme
Meeting, convened the Scheme Meeting.  *Id.* ¶ 38.  She then exercised her authority to adjourn the
Scheme Meeting to February 6, 2020 (the "**Adjourned Scheme Meeting**") to ensure that all
creditors received adequate notice of the Scheme Meeting.  BVI Counsel Decl. Ex. H ¶ 28.  The
Petitioner ensured that notice of the Adjourned Scheme Meeting along with the documents to be
considered at the Adjourned Scheme Meeting (the "**Final Scheme Documents**") were made
available through DTC and via the Constellation Group's public website.  BVI Counsel Decl. ¶
39; BVI Counsel Decl. Ex. H ¶¶ 24-27.  The Final Scheme Documents were uploaded to the
Group's public website and to DTC's legal notice system on January 10, 2020.[20]  BVI Counsel
Decl. Ex. H ¶¶ 25-26.  Creditors were informed that all voting and proxy forms that had already
been provided would be retained and accepted at the Adjourned Scheme Meeting, unless the JPLs
were informed otherwise.  BVI Counsel Decl. ¶ 39.

29.    For a scheme to be approved by the BVI Court, it must be approved by a majority
in number representing 75% in value of the creditors or class of creditors or members or class of

---

[20] A copy of the Final Scheme Documents is attached to the BVI Sanction Order (BVI Counsel Decl. Ex. J).

members present and voting either in person or by proxy at the meeting.  *Id.* ¶ 40.  Those who

attend the Scheme Meeting have an opportunity to ask questions and make representations.  *Id.*

The Scheme Meeting was reconvened on February 6, 2020.  *Id.*; BVI Counsel Decl. Ex. H ¶ 35.

At the Scheme Meeting, 100% of the scheme creditors present or voting by proxy voted to approve

the Scheme, representing 82.99% by value of the total debt subject to the BVI Scheme.  BVI

Counsel Decl. ¶ 40; BVI Counsel Decl. Ex. H ¶¶ 36-37.

30.    Once a scheme is duly approved by creditors at the Scheme Meeting, the next step

is to obtain BVI Court sanction of the BVI Scheme (the "**Sanction Hearing**").  BVI Counsel Decl.

¶ 41.  While the Sanction Hearing appears in the court list and persons with a legitimate interest

can attend and make representations to the BVI Court, the BVI Business Companies Act, 2004,

does not require that scheme creditors be served with notice of the outcome of the Scheme Meeting

or the scheduling of the Sanction Hearing.  *Id.*  However, to ensure that all scheme creditors had a

full and fair opportunity to attend the Sanction Hearing, on February 6, 2020, the Petitioner caused

a notice to be served on all scheme creditors via DTC notifying them that: (i) the BVI Scheme had

been approved by the scheme creditors; (ii) the Sanction Hearing was scheduled to be held on

February 25, 2020; and (iii) "any interested person may appear at the Sanction Hearing."  *Id.*; BVI

Counsel Decl. Ex. I.  The Petitioner also caused the same notice to be posted to the Group's public

website.  BVI Counsel Decl. ¶ 41.

31.    At the Sanction Hearing, the BVI Court's role is not to assess the commercial

benefits of the scheme.  Nor, however, is BVI Court approval of a scheme of arrangement a "rubber

stamp" exercise.  *Id.* ¶ 42.  Rather, at the Sanction Hearing, the applicant must demonstrate (usually

through an affidavit of the Scheme Administrator) that (i) the relevant statutory requirements have

been met; (ii) the classes of creditors were properly identified; (iii) each class was fairly

represented by those attending the scheme meeting and the statutory majority was acting in the *bona fide* interests of the class; and (iv) it would be reasonable to approve the scheme.  *Id.*

32.    The BVI Court held the Sanction Hearing on February 25, 2020 and, based on the evidence submitted by the Scheme Administrator, approved the Scheme of Arrangement.  *Id.*; BVI Counsel Decl. Ex. J.  No scheme creditor or any party objected to the issuance of the Sanction Order.

33.    Once the BVI Court sanctions a scheme of arrangement, the Scheme Administrator may then ensure that it is filed with the BVI Registrar.  BVI Counsel Decl. ¶ 43.  A scheme will become effective upon such filing.  *Id.*

### 2.    The purpose of the BVI Scheme

34.    The purpose of Olinda's BVI Scheme is to restructure Olinda's guarantee obligations "so that they mirror the debtor restructuring of the RJ Debtors in the RJ Plan in an efficient and timely manner in order to secure a better return for [Olinda's] creditors than they would otherwise receive in a liquidation."  BVI Counsel Decl. Ex. J, BVI Scheme § 4.1.  As set forth above, Olinda is a guarantor and grantor pursuant to the Prior 2024 Notes Guarantee. Olinda's value derives from its long-term contract with a large Indian oil and gas company, not from the scrap value of the *Olinda Star* rig.  Accordingly, it is unlikely that Olinda's creditors (the holders of the Prior 2024 Notes) would recover more in a liquidation wherein the contract would be terminated and the rig sold, than through a restructuring of Olinda's debts.  Through a successful restructuring of Olinda, the rig will continue to operate and generate revenue, not only for the life of the existing contract but through subsequent contracts as well.  Furthermore, a failure to restructure the Prior 2024 Notes Guarantee would result in Olinda incurring a financial penalty in the form of additional interest on the Restructured 2024 Notes, which would impose a financial

18

burden on the Constellation Group.  It is therefore not surprising that all creditors that voted on the

Scheme voted in favor of Olinda's restructuring.

35.     In essence, the BVI Scheme seeks to accomplish the following key objectives:

i)     release Olinda from the Prior 2024 Notes Guarantee and terminate all other
obligations under the Prior 2024 Notes Indenture and the Prior 2024 Notes;

ii)    allow Olinda to accede to the Participating 2024 Notes Indenture, the Stub
2024 Notes Indenture and the Non-Participating Notes Indenture in
accordance with the terms set out therein and become a guarantor under the
Restructured 2024 Notes pursuant to the terms of the guarantee set forth in
each of the foregoing indentures (the "**New 2024 Notes Guarantee**");

iii)   release all of the security over the assets granted by Olinda and over the
shares of Olinda in relation to the Prior 2024 Notes;

iv)    allow Olinda to grant new security over the assets and shares of the
company in accordance with the Restructured 2024 Notes; and

v)     allow Olinda to guarantee the obligations of affiliate Constellation Overseas
Ltd. under working capital and letter of credit facilities provided by Banco
Bradesco S.A., secured by the same collateral as the Restructured 2024
Notes in accordance with the priorities set forth therein and pursuant to an
intercreditor agreement between, among others, Constellation Overseas
Ltd. and the indenture trustee of the Restructured 2024 Notes.[21]

36.     Following the implementation of the BVI Scheme and the granting of the New 2024

Notes Guarantee, the former holders of the Prior 2024 Notes (Olinda's sole financial creditor

constituency) will have received new notes on substantially the same terms as the Prior 2024 Notes,

but with certain modifications, including an enhanced collateral package for the Participating 2024

Noteholders, more restrictive covenants on the Constellation Group and an increased interest rate.

None of Olinda's other creditors are impacted by the BVI Scheme.[22]

---

[21]    Pursuant to the RJ Plan, Bradesco agreed to maintain its existing letters of credit and provide a new term loan
to the Constellation Group in the total amount of $10 million in consideration for the same collateral package
pledged to the 2024 Noteholders, with priority as set forth in the RJ Plan.

[22]    While Olinda also has trade creditors, they are not subject to the BVI Scheme as they are being paid in the
ordinary course.

## V.    CONNECTIONS TO THE UNITED STATES

37.    The Prior 2024 Notes and Restructured 2024 Notes are governed by a New York law indenture, which contemplates New York as a venue for disputes.  Olinda also maintains the Escrow Account at White & Case LLP in New York.

### JURISDICTION, ELIGIBILITY AND VENUE

38.    This Court has jurisdiction to consider the Verified Petition pursuant to sections 157 and 1334 of title 28 of the United States Code, as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re:  Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).

39.    This chapter 15 proceeding has been properly commenced with respect to the Debtor in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by the filing of the Verified Petition.  This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code.

40.    Venue is proper in this Court pursuant to section 1410(1) of title 28 of the United States Code, as the principal U.S. assets of the Debtor (including $1,000.67 in cash maintained in the Escrow Account) are located within New York County and thus within this District.  Moreover, venue is proper in this Court pursuant to section 1408(2) of title 28 of the United States Code, as there is a jointly administered pending chapter 15 case concerning the Debtor's affiliates in this District.  *See In re Serviços de Petróleo Constellation S.A.*, 18-13952 (MG) (Bankr. S.D.N.Y.).

41.    The presence of assets within the United States renders the Debtor eligible to file this chapter 15 proceeding pursuant to section 109(a) of the Bankruptcy Code.  *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247-51 (2d Cir. 2013) (applying section 109(a)'s local property requirement to chapter 15 cases); s*ee also* Constellation

20

Recognition Decision at 268-69 (finding that the debtor's New York law-governed prepetition

debt obligations and a per-entity $1,000 retainer in New York bank accounts satisfied section

109(a) and the venue requirements of section 1410(1) of title 28 of the United States Code); *In re*

*Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 611 (Bankr. S.D.N.Y. 2018) (Glenn, J.) (finding that

the "property in the United States" requirement of section 109(a) is satisfied by a New York law-

governed indenture); *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr.

S.D.N.Y. 2016) (Glenn, J.) ("[D]ollar-denominated debt subject to New York governing law and

a New York forum selection clause is independently sufficient to form the basis for jurisdiction.").

## BASIS FOR RELIEF

### I.    THE PETITIONER HAS SATISFIED THE REQUIREMENTS FOR RECOGNITION OF THE BVI PROCEEDING

#### A.    The Requirements of Section 1517(a) of the Bankruptcy Code are Satisfied

42.    Under section 1517(a) of the Bankruptcy Code, subject to the public policy

exception contained in section 1506, a foreign proceeding must be granted chapter 15 recognition

if each of the following three requirements are met: (1) such foreign proceeding is a foreign main

proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign

representative applying for recognition is a person or body; and (3) the petition meets the

requirements of section 1515.  Constellation Recognition Decision at 269; *see also In re Ocean*

*Rig UDW Inc.*, 570 B.R. 687, 698-99 (Bankr. S.D.N.Y. 2017).  As set forth below, the Petitioner

satisfies each of the requirements of section 1517(a) and the BVI Proceeding should be recognized

as a foreign main proceeding or, alternatively, as a foreign nonmain proceeding.

#### 1.    The BVI Proceeding is a "Foreign Proceeding"

43.    The BVI Proceeding satisfies the definition of "foreign proceeding" as required by

section 1517(a)(1) of the Bankruptcy Code.  Section 101(23) defines a "foreign proceeding" as

21

(1) a collective judicial or administrative proceeding under a law relating to insolvency or adjustment of debt, (2) pending in a foreign country, (3) in which the assets and affairs of the debtor are subject to control or supervision of a foreign court, and (4) for the purpose of reorganization or liquidation.  11 U.S.C. § 101(23).

44.    The BVI Proceeding is a collective judicial proceeding pending in the BVI under the supervision of the BVI Court, in which the rights of creditors vis-à-vis the company are administered together.  *Supra* ¶¶ 7, 9.  It was commenced pursuant to the Insolvency Act, which, together with the BVI Business Companies Act, 2004 (the "**BVI Acts**") provide the legislative framework in the BVI for insolvency and the adjustment of debt of companies.  *Supra* ¶¶ 10; BVI Counsel Decl. ¶ 13.  The assets and affairs of Olinda are overseen by the JPLs, who have ultimate corporate authority with respect to actions outside the ordinary course of business.  *Supra* ¶ 12.  The JPLs are officers of the BVI Court, and are subject to the BVI Court's supervision.  *Supra* ¶¶ 7, 9.  The JPLs have a fiduciary duty to consider the interests of creditors as a whole in administering the affairs of Olinda and treat creditors in a fair and even handed manner.  BVI Counsel Decl. ¶ 29. The JPLs are administering the BVI Proceeding for the purpose of restructuring Olinda's debts pursuant to the BVI Scheme, which is a collective, BVI court-supervised arrangement between Olinda and its scheme creditors.  *Supra* ¶ 21.

45.    This Court has previously recognized provisional liquidation proceedings as "foreign proceedings" in offshore jurisdictions that have analogous English-law based restructuring frameworks.[23]  *See, e.g.*, *In re Ocean Rig*, 570 B.R. at 702 (Cayman provisional liquidation and scheme of arrangement); *In re Suntech Power Holdings Co*., 520 B.R. 399 (Bankr.

---

[23]    The BVI Proceeding is the first "soft-touch" joint provisional liquidation proceeding to be commenced in the BVI, so reference is made to similar proceedings in analogous jurisdictions.

22

S.D.N.Y. 2014) (Cayman provisional liquidation); *In re LDK Solar Co.*, No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014), ECF Nos. 43, 44 (Cayman provisional liquidation and scheme of arrangement).[24]

### 2.    The Petitioner is the proper Foreign Representative

46.    A chapter 15 case is properly commenced by the filing of a petition for recognition by a "foreign representative." *See* 11 U.S.C. §§ 1504, 1515(a). The Bankruptcy Code defines a "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). U.S. courts, including this Court, have previously found that offshore provisional liquidators qualify as "foreign representatives." *See, e.g.*, *In re Ocean Rig*, 570 B.R. at 701 (recognizing Cayman Islands joint provisional liquidators as foreign representatives); *accord In re Fairfield Sentry Ltd.*, No. 10 Civ. 7311 (GBD), 2011 U.S. Dist. LEXIS 105770, at *8 (S.D.N.Y. Sept. 15, 2011) ("**Fairfield Sentry I**") (noting that it was undisputed that BVI provisional liquidators were foreign representatives).

47.    The Petitioner is an individual and therefore a "person" as defined under 11 U.S.C. § 101(41). The Petitioner was appointed and is duly authorized and empowered by the BVI Court

---

[24]    While the U.S. Bankruptcy Code does not include provisions explicitly authorizing schemes of arrangement, U.S. bankruptcy courts, including this Court, have found that foreign schemes of arrangement satisfy section 101(23)'s definition of a collective judicial proceeding providing for the adjustment of debt that qualifies for recognition. *In re Ocean Rig*, 570 B.R. at 695 (noting that Cayman schemes are collective judicial proceedings commenced under a statute applicable to corporate insolvencies or the adjustment of debt, that the joint provisional liquidators are officers of the court and subject to its control, that the debtor's assets and affairs are subject to the court's control, and that the purpose of the scheme is reorganization); *In re Avanti*, 582 B.R. at 613 ("Schemes of arrangement under UK law have routinely been recognized as foreign proceedings in chapter 15 cases.") (collecting cases); *see also In re Lloyd*, No. 05-60100, 2005 Bankr. LEXIS 2794, at *6 (Bankr. S.D.N.Y. Dec. 7, 2005) (recognizing UK scheme as foreign main proceeding); *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 48-49 (Bankr. S.D.N.Y. 1999) (recognizing UK scheme as foreign main proceeding under chapter 15 precursor, section 304).

to (i) administer the provisional liquidation of Olinda's assets and affairs, (ii) implement the BVI

Scheme in her capacity as JPL and Scheme Administrator, (iii) and serve as foreign representative

in this chapter 15 case.  *Supra* ¶¶ 12-13, 27 .   The Petitioner is also an officer of the BVI Court.

*Supra* ¶ 7.   The Petitioner is thus a proper "foreign representative" within the meaning of section

101(24) with respect to Olinda, and section 1517(a)(2) is satisfied.

### 3.    The Petition meets the additional requirements of section 1515 and Bankruptcy Rule 1007(a)(4)

48.    Recognition of a foreign proceeding further requires that the petition meet the filing

requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).   Sections

1515(b) and (c) require that a recognition petition include a certified copy of the decision

commencing the foreign proceeding and appointing the foreign representative, as well as a

statement identifying all foreign proceedings with respect to the debtor that are known to the

foreign representative.   *See* 11 U.S.C. § 1515(b), (c).   The Petitioner has satisfied these

requirements.   This Verified Petition was filed pursuant to section 1515(a) and includes all

disclosures and documents required by sections 1515(b) and (c).  *See* BVI Counsel Decl. Ex. B;

Ex. 4.[25]

49.    The Foreign Representative has also satisfied the additional filing requirements set

forth in Bankruptcy Rule 1007(a)(4), by filing: (a) corporate ownership statements containing the

information described in rule 7007.1 of the Bankruptcy Rules, as required by Bankruptcy Rule

1007(a)(4)(A); and (b) lists containing the names and addresses of all person or bodies authorized

to administer the foreign proceedings of the Debtor and all parties to litigation pending in the

United States in which the Debtor is a party at the time of the filing of the Petition.  *See* Ex. 5; Ex.

---

[25]    A copy of Petitioner's statement pursuant to 11 U.S.C. § 1515(c) is attached hereto as <u>Exhibit 4</u>.

6.[26]  This chapter 15 case was properly commenced with respect to the Debtor in accordance with

sections 1504, 1509(a) and 1515.

> **B.      Olinda's BVI Proceeding Satisfies the Requirements for Recognition as a
> "Foreign Main Proceeding"**

50.      Before granting recognition, the Court must first determine whether the BVI

Proceeding constitutes either a main or nonmain proceeding with respect to Olinda.  Section 1502

defines a "foreign main proceeding" as a "foreign proceeding pending in the country where the

debtor has the center of its main interests."  11 U.S.C. § 1502(4).  While the Bankruptcy Code does

not define "center of main interests," section 1516(c) provides that, in the absence of evidence to

the contrary, a debtor's registered office or habitual residence "is presumed to be the center of the

debtor's main interests."  11 U.S.C. § 1516(c).   The legislative history indicates that this

presumption was "designed to make recognition as simple and expedient as possible" in cases

where COMI is not controversial.  H. Rep. No. 109-31, pt. 1, at 112-13 (2005).  However, the

COMI presumption is rebuttable.  Constellation Recognition Decision at 272; *see also In re Bear

Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 335 (S.D.N.Y.

2008) ("[S]ection 1516(c) creates no more than a rebuttable evidentiary presumption, which may

be rebutted notwithstanding a lack of party opposition.").

51.      The Second Circuit made clear that COMI is determined as of the time of the

chapter 15 filing.  *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d

127, 137 (2d Cir. 2013) ("**Fairfield Sentry II**") ("[A] debtor's COMI should be determined based

on its activities at or around the time the Chapter 15 petition is filed."); *In re Betcorp Ltd.,* 400

B.R. 266, 291 (Bankr. D. Nev. 2009) ("[I]nquiry into the debtor's past interests" could "lead to a

---

[26]      A copy of Olinda's corporate ownership statement is attached hereto as <u>Exhibit 5</u>, and a copy of Petitioner's
statement of authorized persons pursuant to Fed. R. Bankr. P. 1007(a)(4)(B) is attached hereto as <u>Exhibit 6</u>.

denial of recognition in a country where a debtor's interests are truly centered and thereby

frustrates . . . the purposes of COMI inquiry.").  However, to the extent that a debtor's COMI has

shifted prior to filing its chapter 15 petition, courts may engage in a more "holistic analysis" to

ensure that the debtor has not manipulated COMI in bad faith.  *In re Ocean Rig*, 570 B.R. at 704.

In conducting such an analysis, however, a court should not conduct an inquiry into a "debtor's

entire operational history," but may rather find it appropriate to examine the period between the

filing of the chapter 15 petition and the commencement of the underlying foreign proceeding, in

order to ascertain whether a debtor had manipulated its COMI improperly.  *Fairfield Sentry II*, 714

F.3d at 134, 137; *accord In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169, 196 (Bankr.

S.D.N.Y. 2017); *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1025 (5th Cir. 2010).

52.    In assessing whether the registered office presumption withstands scrutiny, courts

in this district have developed a "widely adopted" list of non-exclusive factors for determining

COMI, which, while not to be applied mechanically, are helpful in assessing an entity's COMI.

Constellation Recognition Decision at 272.  The *SPhinX* court explained:

> Various factors, singly or combined, could be relevant to such a [COMI]
> determination: [1] the location of the debtor's headquarters; [2] the location of those
> who actually manage the debtor (which, conceivably could be the headquarters of
> a holding company); [3] the location of the debtor's primary assets; [4] the location
> of the majority of the debtor's creditors or of a majority of the creditors who would
> be affected by the case; [5] and/or the jurisdiction whose law would apply to most
> disputes (the "**SPhinX Factors**").

*In re SPhinX, LTD*., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006).

53.    When determining the "location of those who actually manage the debtor," courts

consider more than the location of the board of directors of the debtor.  Constellation Recognition

Decision at 273 (finding that the analysis of the location of management should be "flexible" and

reflect the realities of a particular business).  Notably, courts consider the activities of liquidators

26

and provisional liquidators in their COMI analyses. *In re Ocean Rig*, 570 B.R. at 706 (finding

debtors' COMI in the Cayman Islands as "the site where their business [had been] run" by joint

provisional liquidators pursuant to a protocol with the directors); *Fairfield Sentry I*, 2011 U.S.

Dist. LEXIS 105770, at *20 , *aff'd*, 714 F.3d 127 (2d Cir. 2013) (finding COMI in the BVI where

BVI liquidators had been "directing and coordinating" the debtor's affairs since their

appointment); *In re Betcorp Ltd.*, 400 B.R. at 292 (finding COMI in Australia where "[t]he location

of those that manage Betcorp – the liquidators" were located); *In re Suntech*, 520 B.R. at 418

(finding COMI in the Cayman Islands where joint provisional liquidators had "centralized the

administration of the Debtor's affairs and its restructuring").  Indeed, courts have held that "the

commencement of a provisional liquidation may have a profound effect on the business of the

debtor." *In re Suntech*, 520 B.R. at 417.  This is because provisional liquidation *inter alia* "triggers

a restructuring process on which the survival of the debtor's traditional business may depend." *Id.*

54.    Additionally, in determining a debtor's COMI, the Second Circuit and this Court

have examined the expectations of creditors and interested parties.  Constellation Recognition

Decision at 262 (considering the expectation of the 2024 Noteholders as the "key creditor

constituency of the offshore drilling rigs"); *Fairfield Sentry II*, 714 F.3d at 130 ("The relevant

principle . . . is that the COMI lies where the debtor conducts its regular business, so that the place

is ascertainable by third parties.").  In order to protect creditors' and interested parties' interests,

courts ask whether a COMI would have been ascertainable to such parties.  *In re Millennium Glob.*

*Emerging Credit Master Fund Ltd.*, 474 B.R. 88, 93 (S.D.N.Y. 2012) ("**Millennium Glob. II**").

Creditor and third party expectations are determined by "objective evidence," including evidence

"that could provide interested parties with notice that a debtor's COMI was in a particular

jurisdiction other than the place of its registered office."  Constellation Recognition Decision at

27

274.[27]   Creditor expectations may shift over time.  Indeed, the activities of a joint provisional liquidator over a significant period may cause creditors to look to that person's jurisdiction as the debtor's COMI.  *See, e.g.*, *In re British Am. Isle of Venice, Ltd.*, 441 B.R. 713, 723 (Bankr. S.D. Fla. 2010) (finding BVI liquidator's "concerted efforts on behalf of the Debtor, and the extended passage of time" to necessarily result in third parties considering the BVI to be the debtor's COMI).  Creditor support for or acquiescence to a proposed COMI is also a separate relevant factor in the court's COMI assessment.  *SPhinX*, 351 B.R. at 117.

55.      As of the date of this petition, the statutory presumption that Olinda's COMI lies in the BVI is consistent with reality.  While Olinda's sole director resides in the Cayman Islands, its operational management team is located in Brazil, its treasury function is located in Panama, and its sole drilling rig is operating in the Indian Ocean, the JPLs have centralized Olinda's restructuring in the BVI.  *Supra* ¶¶ 2, 5 .  For over a year, Olinda has been in provisional liquidation and under the supervision of the BVI Court and its BVI Court-appointed provisional liquidators.  *Supra* ¶¶ 5, 10.  The JPLs have actively exercised the authority conferred upon them by the BVI Court.  *Supra* ¶ 15.  Pursuant to the order of the BVI Court appointing the JPLs (the "**BVI Appointment Order**") they have, *inter alia*, (i) kept apprised of Olinda's general operations; (ii) retained BVI counsel from whom they have regularly sought advice; (iii) reviewed and commented on Olinda's draft board resolutions, court filings and other documents concerning Olinda's restructuring; and (iv) supported various BVI Court applications.  *Supra* ¶¶ 14-15.

---

[27]      Additionally, some courts have employed the concept of "principal place of business" to guide their COMI analysis and, accordingly, have applied the Supreme Court's definition of that concept, which looks at a corporation's "nerve center," *i.e.*, "where a corporation's officers direct, control, and coordinate the corporation's activities."  *See Fairfield Sentry II*, 714 F.3d at 138 n.10 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010).  The nerve center analysis is not a "straightforward standard when applied to most international conglomerates [but] it can provide a helpful reminder that courts should not perfunctorily rely upon the place of incorporation or location of board meetings to establish the corporation's ultimate COMI." Constellation Recognition Decision at 276.

28

56.    Moreover, the JPLs played a pivotal role in effecting Olinda's BVI restructuring and overseeing the non-ordinary course transactions undertaken in connection therewith. *Supra* ¶¶ 14-15. As set forth above, the JPLs participated in negotiations between Olinda and the PSA Parties to facilitate Olinda's restructuring in the BVI. *Supra* ¶ 15. They also took the steps they deemed necessary to satisfy themselves that the BVI Scheme was in the best interests of creditors and, following such determination, caused the BVI Scheme to be put forward to creditors and ultimately the BVI Court for approval. *Supra* ¶ 15. Throughout the BVI Scheme process, the JPLs oversaw the dissemination of notices and documents to scheme creditors and extensively engaged with creditors, responding to their questions and requests for information. *Supra* ¶ 15. The Petitioner, in her capacity as Scheme Administrator and JPL, is now further tasked by the BVI Court with implementing the BVI Scheme. *Supra* ¶ 27. While the Petitioner resides in the Cayman Islands, her authority to act for Olinda emanates squarely from orders of the BVI Court and her ability to act is contingent upon the ongoing appointment of BVI-resident provisional liquidator, Mr. Pretlove. *Supra* ¶¶ 9, 11. Petitioner exercises joint authority with Mr. Pretlove and is in regular contact with him. *Supra* ¶ 11. Mr. Pretlove has access to the BVI Virtual Integrated Registry and Regulatory General Information Network ("**VIRRGIN**") and is responsible for filings, including filing the registration of the Scheme and the discharge of the JPLs on VIRRGIN. Mr. Pretlove is also the point of contact for liaising with the BVI Financial Services Commission (the regulator of BVI licensed insolvency practitioners), for the purposes of providing updates in respect of Olinda's provisional liquidation and has provided updates to this regulatory body in that regard. Mr. Pretlove has also been involved in strategy discussions in respect of Olinda's provisional liquidation, and has reviewed and commented on the JPLs' reports and filings with the

29

BVI Court.  At all times during his appointment, Mr. Pretlove was resident in the BVI.  *Supra*
¶ 11.

57.    This Court in *In re Ocean Rig* previously encountered the challenge of ascertaining
the COMI of a special purpose financial vehicle in an international drilling business that conducted
its business throughout the world, principally on the high seas.  570 B.R. at 704.  The Court noted
that "the nature of the Group's business and the mobility of their assets complicate the COMI
analysis" but ultimately found that the debtors' COMI was in the Cayman Islands, which, like the
BVI in this case, was the "the site where their business [had been] run" by the provisional
liquidators and directors.  *Id.* at 704, 706.  This case bears further similarity to *Ocean Rig* in that
Mr. Pearson is the sole director of the debtor and the Petitioner is one of the JPLs.  BVI Counsel
Decl. ¶ 24.  As set forth above, Mr. Pearson and the JPLs have managed the affairs of Olinda
pursuant to the BVI Insolvency Protocol, which was approved by the BVI Court in the BVI
Proceeding and is substantially similar to the protocol entered into in the *Ocean Rig* case.  *Supra*
¶ 14.  Here, as in *Ocean Rig*, the activities of the JPLs in overseeing the restructuring of Olinda
weigh heavily in favor of a finding of COMI in the BVI.[28]

58.    The statutory presumption that Olinda's COMI is in the BVI is also consistent with
the expectations of Olinda's creditors and other interested parties.  In the First Ch. 15 Proceeding
this Court found that the 2024 Noteholders were "aware of the ultimate reality described in the
Notes—that the Constellation Group is a highly integrated group of companies with . . . several of

---

[28]    As set forth above, the sole director of Olinda, Michael Pearson, resides in the Cayman Islands, while the
Petitioner resides in the Cayman Islands and Mr. Pretlove resides in the BVI.  Although the Petitioner does
not reside in the BVI, her actions since her appointment as JPL have been taken in the BVI as described
below and arise under authority conferred by the BVI Court.  While, as in *Ocean Rig*, this is a "soft-touch"
provisional liquidation that grants Mr. Pearson the authority to continue to conduct the ordinary business
operations of Olinda, the JPLs have been very active in facilitating Olinda's BVI-based restructuring process.
*Supra* ¶¶ 12-17.

30

its subsidiaries place of incorporation in the BVI." Constellation Recognition Decision at 284. Thus, as at the petition date of the First Ch. 15 Proceeding this Court held that the 2024 Noteholders "could have reasonably foreseen" the BVI Proceedings. *Id.* As at the date of this Petition, the expectations of Olinda's creditors of a BVI COMI had crystallized. By the time this Petition was filed, the BVI Proceedings had been in progress for more than a year. *Supra* ¶¶ 5, 10. The appointment of the JPLs had been advertised, and a suffix had been added to Olinda's name in relevant filings with this Court indicating that it is in provisional liquidation, putting those who had dealings with Olinda on notice to correspond with the JPLs. BVI Counsel Decl. ¶ 30. The JPLs, both directly and through counsel, have engaged in numerous communications with Olinda's scheme creditors. *Supra* ¶ 15. Moreover, a majority of the 2024 Noteholders—Olinda's only scheme creditor constituency—had expressly required Olinda to centralize its restructuring in the BVI. *Supra* ¶¶ 18-19. Indeed, the Consenting 2024 Noteholders bargained for that outcome pursuant to the Olinda Term Sheet and agreed to be bound by it. The Consenting 2024 Noteholders and the PSA Parties allowed the RJ Plan to close without Olinda because of Olinda's agreement to restructure the Prior 2024 Notes Guarantee in the BVI. *Supra* at 3. Furthermore, as at the date of this Petition, Olinda's BVI Scheme had been approved unanimously by all scheme creditors that voted on it, representing 82.99% in value. BVI Counsel Decl. Ex. H. Accordingly, as at the date of this filing, Olinda's scheme creditors firmly understood Olinda's COMI to be in the BVI.

59.      "If anything weighs heavily" in favor of a particular COMI "it is the factor of creditor support." Constellation Recognition Decision at 284. As the *SPhinX* Court explained, "[b]ecause their money is ultimately at stake, one generally should defer . . . to the creditors' acquiescence in or support of a proposed COMI . . . [they] can . . . best determine how to maximize the efficiency of a . . . reorganization and, ultimately, the value of the debtor…." 351 B.R. at 117.

Olinda's scheme creditors overwhelmingly support Olinda's BVI restructuring. The BVI Scheme was approved by 100% of scheme creditors present and voting, and 82.99% of the scheme creditors by total value. Moreover, the Consenting 2024 Noteholders funded $27 million of new money pursuant to the Rights Offering on the understanding that the Prior 2024 Notes Guarantee would be restructured in the BVI pursuant to the Olinda Term Sheet. *Supra* ¶¶ 18-19. No creditor has opposed recognition of the BVI Proceeding or the enforcement of the BVI Scheme and thus this factor weighs heavily in favor of finding COMI in the BVI. "[T]he case law asks the Court to look at a spectrum of factors—including nonboard management, the location of assets, the expectations of creditors, [and] the desires of creditors[.]" Constellation Recognition Decision at 286. Based on this spectrum of factors, assessed at the time of this filing, Olinda's COMI is the BVI.

        **C.**       **In the Alternative, the Court Should Find that Olinda's BVI Proceeding is at Least a "Foreign Nonmain Proceeding"**

      60.    Courts will recognize a foreign proceeding as a "foreign nonmain proceeding" if "the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending." 11 U.S.C. § 1517(b)(2). Section 1502(2) defines "[e]stablishment" as "any place of operations where the debtor carries out a nontransitory economic activity[,]" *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 70 (Bankr. S.D.N.Y. 2011), *aff'd* 474 B.R. 88 (S.D.N.Y. 2012) ("**Millennium Glob. I**"), and courts have required proof of more than a "mail-drop presence," Constellation Recognition Decision at 277 (citation omitted); 11 U.S.C. § 1502(2). At least one court has—noting the "paucity of U.S. authority" on the subject—favorably cited a "persuasive" English law holding that the presence of an asset and minimal management or organization can suffice to create an establishment, *Millennium Glob. I*, 458 B.R. at 84-85.

61.    As with COMI, whether the debtor has an "establishment" in a country must be determined at the time of filing the chapter 15 petition.  *See Beveridge v. Vidunas (In re O'Reilly)*, 598 B.R. 784, 803 (Bankr. W.D. Pa. 2019) (adopting *Fairfield Sentry* and *Ran* findings that "the presumptive date from which [a c]ourt is to ascertain [a] debtor's center of main interests and/or establishment is the date the [c]hapter 15 petition was filed").  Several factors "contribute to identifying an establishment: the economic impact of the debtor's operations on the market, the maintenance of a 'minimum level of organization' for a period of time, and the objective appearance to creditors whether the debtor has a local presence."  *Millennium Glob. I*, 458 B.R. at 85.  A showing of impact of the debtor's activities on the foreign jurisdiction involves a "showing of a local effect on the marketplace," *In re Creative Fin., Ltd. (In Liquidation)*, 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016),[29] evidenced by, among other things, engagement of "local counsel and commitment of capital to local banks," *Millennium Glob. I*, 458 B.R. at 86-67.  At least one court has also found that the presence of liquidators is relevant to the determination of whether a debtor has an establishment in that location.  *See e.g.*, *Millennium Glob. I*, 458 B.R. at 86 (finding that Bermuda proceedings should be recognized as foreign main proceedings or, in the alternative, foreign nonmain proceedings, after considering, among other factors, the fact that the liquidators are subject to the control of the court in Bermuda); *Millennium Glob. II*, 474 B.R. at 94 (affirming *Millennium Glob. I* and noting, *inter alia*, that "Bermuda is where the liquidation proceedings are taking place, under the supervision of the Bermuda court").

---

[29]    In *Creative Finance*, the Court found that the minimal acts performed by the liquidator were insufficient to support a BVI establishment.  Those concerns are inapplicable to this case.  Olinda's JPLs have carried out substantial activity since their appointment and have diligently undertaken the tasks that the BVI Court authorized them to perform.  Moreover, the *Creative Finance* court premised its decision on certain findings of bad faith, which are not present here.

62.    In this case, the BVI is not merely a letterbox jurisdiction for Olinda.  More than a
year has passed since the appointment of the BVI Court-appointed JPLs, and the JPLs have
centralized Olinda's restructuring activities in the BVI.  They have directed creditors and other
interested parties to correspond with them using their BVI contact details,[30] entered into a court-
sanctioned protocols in respect of Olinda, have supported numerous filings and applications to the
BVI Court (including for sanction of the BVI Scheme), and have had an effect on the local
marketplace through their retention of BVI counsel.  These actions are sufficient to, at a minimum,
support the finding of an "establishment" in the BVI.

63.    Denying recognition of Olinda's BVI Proceeding as either a foreign main or
nonmain proceeding would leave Olinda without access to U.S. courts.  Olinda will not have an
effective means of restructuring its guarantee without the relief requested herein.  Such a result
would be at odds with the purpose of chapter 15 of the Bankruptcy Code—to engender cooperation
among foreign courts with respect to restructuring and insolvency proceedings.  *See Millennium
Glob. I*, 458 B.R. at 69, 81-82.  Moreover, a failure to restructure the Prior 2024 Notes Guarantee
may have ramifications on the entire Constellation Group's restructuring because it could trigger
a default under the New Indentures.

## II.    THE COURT SHOULD GRANT THE PETITIONER'S REQUEST FOR DISCRETIONARY RELIEF PURSUANT TO SECTION 1521, 1507 AND 105 OF THE BANKRUPTCY CODE

64.    The Petitioner requests that pursuant to sections 1521(a), 1507 and 105 of the
Bankruptcy Code, the Court (i) grant full force and effect to the BVI Scheme within the territorial
jurisdiction of the United States; (ii) issue a permanent injunction enjoining actions that would

---

[30]    Due to weather-related telecommunication issues in the BVI, all BVI staff operated with a Cayman telephone number.

interfere with the implementation of the BVI Scheme and BVI Sanction Order, (iii) direct the

Directed Parties (defined below) to take any and all lawful actions that may be necessary to give

effect to and implement the BVI Scheme and (iv) exculpate the JPLs (including, for the avoidance

of doubt, the Petitioner as Scheme Administrator) and Directed Parties from liability on the terms

set forth in the Proposed Order.  Constellation Recognition Decision at 272 ("[O]nce the decision

to grant recognition is made, principles of comity and the provisions of chapter 15 can provide

substantially similar relief to a debtor—whether a proceeding is recognized as main or nonmain.");

*see also In re SPhinX, Ltd*., 351 B.R. at 122.  Granting this relief is appropriate, particularly in the

interest of giving comity to the decision of the BVI court to sanction Olinda's scheme.

### A.    Applicable Standards

65.    Upon recognition of a foreign proceeding, section 1521(a) of the Bankruptcy Code

authorizes the Court to grant "any appropriate relief" to a foreign representative "where necessary

to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of

the creditors," provided that the interests of creditors and other interested entities are sufficiently

protected.  11 U.S.C. §§ 1521(a), 1522(a).  This Court has explained  "sufficient protection" as

"embodying three basic principles":

> [T]he just treatment of all holders of claims against the bankruptcy estate, the
> protection of U.S. claimants against prejudice and inconvenience in the processing
> of claims in the [foreign] proceeding, and the distribution of proceeds of the
> [foreign] estate substantially in accordance with the order prescribed by U.S. law.

*In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009) (Glenn, J.) (quoting *In re*

*Artimm, S.r.L*., 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005)).

66.    Pursuant to section 1507, the Court may also grant discretionary relief to provide

additional assistance beyond that permitted under section 1521 to a foreign representative.

11 U.S.C. § 1507(a); H. Rep. No. 109-31, pt. 1, at 109 (2005).  In exercising discretion to grant

35

relief under section 1507(a), courts are guided by the standards set forth in section 1507(b), which

provides that:

> (b)    In determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure —
>
> a.    just treatment of all holders of claims against or interests in the debtor's property;
>
> b.    protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> c.    prevention of preferential or fraudulent dispositions of property of the debtor;
>
> d.    distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and
>
> e.    if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b).[31]  Additionally, section 105(a) provides that the "court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title."

11 U.S.C. § 105(a).

67.    "In deciding whether to grant appropriate relief or additional assistance under

chapter 15, courts are guided by principles of comity and cooperation with foreign courts."  *In re

Avanti*, 582 B.R. at 616; *In re Atlas Shipping*, 404 B.R. at 738.  The Supreme Court has held that

---

[31]    The interplay between the relief available under sections 1507 and 1521 is "far from clear."  *See In re Atlas Shipping*, 404 B.R. at 741.  The Fifth Circuit set forth a three-part analysis to aid courts in assessing which provision to use in granting relief in chapter 15 cases.  *Ad Hoc Grp. of Vitro Noteholders v. Vitro SAB De CV (In re Vitro S.A.B. de C.V.)*, 701 F.3d 1031, 1054 (5th Cir. 2012).  Under this approach, courts first consider the relief specified in sections 1521(a) and (b), and, if the relief requested is not provided there, consider whether the relief falls more generally under section 1521's grant of "any appropriate relief."  *Id.*  "Appropriate relief" is "relief previously available under Chapter 15's predecessor, § 304."  *Id.*; *In re Atlas Shipping A/S*, 404 B.R. at 726; *In re Oi S.A.*, No. 16-11791, 2018 Bankr. LEXIS 2053, at *29 (Bankr. S.D.N.Y. July 9, 2018).  Finally, "[o]nly if a court determines that the relief requested was not formerly available under § 304 should a court consider whether relief would be appropriate as 'additional assistance' under § 1507."  *Vitro*, 701 F.3d at 1054.  It is open to the Court, however, to separately conclude whether relief is available under section 1507 and, if it is, the Court need not decide whether the "any appropriate relief" language in section 1521 would also provide a basis for relief.  *In re Sino-Forest Corp.*, 501 B.R. 655, 663 n.3 (Bankr. S.D.N.Y. 2013) (Glenn, J.).

36

a foreign judgment should not be challenged in the U.S. if the foreign forum provides: "[A] full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it [is] sitting . . . ." *Hilton v. Guyot*, 159 U.S. 113, 202-03 (1895); *see also Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy.").

> **B.    This Court Should, in the Exercise of Comity, Enforce the BVI Scheme and the BVI Sanction Order within the Territorial Jurisdiction of the United States**

68.    This Court has previously held that "appropriate relief" under section 1521 or "additional assistance" under section 1507 may include recognizing and enforcing a foreign scheme of arrangement in the exercise of comity.  *In re Ocean Rig*, No. 17-10736 (MG) (Bankr. S.D.N.Y. Aug. 22, 2017) [ECF No. 122] (enforcing Cayman scheme of arrangement); *In re Avanti*, 582 B.R. 603 (enforcing UK scheme of arrangement); *In re Cell C Proprietary Ltd.*, 571 B.R. 542, 551 (Bankr. S.D.N.Y. 2017) (Glenn, J.) (enforcing South African scheme of arrangement); *In re Tokio Marine Eur. Ins. Ltd.*, No. 11-13420, 2011 Bankr. LEXIS 5805 (Bankr. S.D.N.Y. Sept. 8, 2011) (recognizing and enforcing an English scheme of arrangement); *In re Highlands Ins. Co. (U.K.) Ltd.*, No. 07-13970, 2009 Bankr. LEXIS 5744 (Bankr. S.D.N.Y. Aug. 18, 2009) (same).

69.    Here, recognizing and enforcing the BVI Scheme and the BVI Sanction Order is necessary and appropriate.  The United States and BVI share the same common law traditions and fundamental principles of law, including an emphasis on procedural fairness.  *Supra* ¶ 6.  Olinda's

37

creditors received ample notice of the existence of Olinda's provisional liquidation proceedings, the JPLs advertised their appointment and, from the date of the JPLs' appointment, a suffix was added to Olinda's name in all filings with this Court indicating that it was in provisional liquidation to ensure that those who have dealings with Olinda were on notice that it was subject to provisional liquidation in the BVI.  *Supra* ¶ 15; BVI Counsel Decl. ¶ 30.  Although a creditor or other interested party with standing may apply to the BVI Court to challenge the appointment of the provisional liquidator, none has.  BVI Counsel Decl. ¶¶ 30, 42.  Moreover, scheme creditors received ample notice of Olinda's proposed entry into the BVI Scheme via the DTC and through the Constellation Group's public website.  *Supra* ¶¶ 26, 28, 30.  Such creditors had a full and fair opportunity to vote on and be heard in connection with the BVI Scheme, in a manner that is consistent with U.S. standards of due process.  *Supra* ¶¶ 26, 28, 30.  No scheme creditor was prejudiced because it was foreign-based.  BVI Counsel Decl. ¶¶ 15, 40.  The JPLs oversaw the approval and implementation of the BVI Scheme of Arrangement, in their capacity as officers of the BVI Court and fiduciaries tasked with protecting the collective interests of all creditors.  *Supra* ¶¶ 27, 44.  Finally, the BVI Court has approved the BVI Scheme.  *Supra* ¶ 32.  It issued the BVI Sanction Order after notice and a hearing, having found *inter alia* that the requirements of BVI law and the Convening Order were met.  *Supra* ¶¶ 31-32.  The matters considered by the BVI Court, in approving the BVI Scheme, including notice and disclosure requirements and the proper classification of creditors, reflect similar sensitivity to issues of due process and just treatment of creditors considered by U.S. bankruptcy courts in approving plans of reorganization.  *Supra* ¶ 31.  Accordingly, this Court should grant comity to the BVI Scheme and BVI Sanction Order.

### C.    This Court Should Grant a Permanent Injunction Barring Claims Against Olinda to Prevent Irreparable Harm and Support the Proper Implementation of the BVI Scheme

70.    U.S. bankruptcy courts, including this Court, have granted permanent injunctions in numerous chapter 15 cases—including with respect to nonmain proceedings—to support the proper implementation of a scheme of arrangement. *See, e.g.*, *In re Ocean Rig*, No. 17-10736 (MG) (Bankr. S.D.N.Y. Sept. 20, 2017) [ECF No. 153] (permanently enjoining all entities from taking *inter alia* any action inconsistent with Cayman schemes or against released parties); *In re Avanti*, 582 B.R. at 619 (enjoining parties from taking any action inconsistent with the Scheme in the United States, including giving effect to the releases set out in the English scheme); *In re Winsway Enters. Holdings Ltd.*, No. 16-10833 (MG) (Bankr. S.D.N.Y. June 16, 2016) [ECF No. 22] ¶ 5(b) (Glenn, J.) (permanently enjoining creditors of nonmain debtor from commencing any suit, action or proceeding in the territorial jurisdiction of the United States to settle any dispute arising out of or relating to Hong Kong scheme of arrangement); *In re Tokio Marine Eur. Ins. Ltd.*, 2011 Bankr. LEXIS 5805, at *84 (permanently enjoining creditors from taking any actions in contravention of or inconsistent with the terms of the English scheme of arrangement); *In re Highlands Ins. Co. (U.K.) Ltd.*, 2009 Bankr. LEXIS 5744, at *5 (same).

71.    Pursuant to section 1521(e), the federal standard for injunctive relief, which requires a party to show that it is likely to suffer irreparable harm in the absence of an injunction, applies in chapter 15 cases.  11 U.S.C. § 1521(e); *MF Glob. Holdings Ltd. v. Allied World Assurance Co. (In re MF Glob. Holdings Ltd.)*, 562 B.R. 55, 64 (Bankr. S.D.N.Y. 2017) (Glenn, J.).  In the context of the enforcement of a foreign confirmation order, there is threat of irreparable harm where the orderly determination of claims against a debtor and the fair distribution of its assets could be disrupted.  *See, e.g.*, *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458

(2d Cir. 1985) ("Unless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail.") (citation omitted).

72.     Unless this Court issues the requested permanent injunction, one or more persons or entities may take action that is inconsistent with or in contravention of the terms of the BVI Scheme, including seeking to enforce the accelerated Prior 2024 Notes Guarantee against Olinda in New York.  Such action would interfere with, and cause harm to, the administration of the BVI Scheme, as it may jeopardize Olinda's contracts and would deplete Olinda's resources.  As a result, Olinda and its creditors are exposed to irreparable injury for which there is no adequate remedy at law, in the absence of an injunction.  Thus, if the Petitioner is successful on the merits in obtaining an order granting comity to the BVI Scheme, a permanent injunction should issue to support its proper implementation.

**D.     This Court Should Direct the Directed Parties to Take the Required Actions under the BVI Scheme and BVI Sanction Order**

73.     The Petitioner also seeks assistance from the Court in directing the Directed Parties[32] to carry out all actions required of them pursuant to the BVI Scheme.  Such actions may include but are not limited to (i) cancelling the Prior 2024 Notes Guarantee and related security over the assets granted by Olinda and over the shares of Olinda, including on the records of DTC, Euroclear and Clearstream; (ii) terminating all obligations under the Prior 2024 Notes Indenture and the Prior 2024 Notes, (iii) allowing the Olinda to accede to the New Indentures in accordance with the terms set out therein and become a guarantor under the Restructured 2024 Notes pursuant

---

[32]     Collectively, the Directed Parties are (i) Eleanor Fisher in her capacity as a provisional liquidator of the Debtor and scheme administrator of the BVI Scheme; (ii) Paul Pretlove in his capacity as a provisional liquidator of the Debtor; (iii) Wilmington Trust, National Association ("**Wilmington Trust**"), in its capacity as the indenture trustee of the Prior 2024 Notes, the Restructured 2024 Notes and as indenture trustee under the Prior 2024 Notes Indenture and the New Indentures; (iv) the Depository Trust Company ("**DTC**") in its capacity as record holder of the Prior 2024 Notes and the Restructured 2024 Notes; and (iv) Euroclear Bank S.A./N.V. ("**Euroclear**") and Clearstream Banking, société anonyme ("**Clearstream**").

to the terms of the guarantee set forth in each of the New Indentures, (iv) delivering the New 2024

Notes Guarantee and other related documentation to creditors as provided for by the New

Indentures, and (v) cancelling the dollar-for-dollar escrow position established at DTC in respect

of claims of the Prior 2024 Notes.[33]  Without an order from a U.S. Court, the Directed Parties may

resist taking such actions.  By granting the Petitioner's request for directions, the Court will give

clear direction and authority under US law to the necessary parties to carry out the provisions of

the BVI Scheme, and thereby benefit Olinda and its creditors.

74.    Courts, including this court, have granted similar requests for direction in other

chapter 15 cases.  *In re Inversora Eléctrica de Buenos Aires S.A.,* 560 B.R. 650, 657 (Bankr.

S.D.N.Y. 2016) (Glenn, J.) (granting order directing DTC and indenture trustee to carry out the

ministerial actions necessary to consummate the foreign order); *In re Lupatech S.A.*, No. 16-11078

(MG) (Bankr. S.D.N.Y. 2016) [ECF Nos. 38, 44] (same).

**E.    This Court should Exculpate the Directed Parties and JPLs from Liability in
Connection with the Implementation of the BVI Scheme**

75.    The Petitioner requests that this Court grant comity to the exculpation provision set

forth in the BVI Scheme and that the JPLs and their respective employees, advisors and attorneys

be exculpated and released from liability for actions or omissions in connection with the

consummation of the BVI Scheme, other in respect of any acts or omissions that are determined

by a final order to have constituted gross negligence, fraud, or willful misconduct.  The BVI

Scheme provides for the exculpation of the Scheme Administrator and her respective advisors as

follows:

---

[33]    The dollar-for-dollar escrow position represents the 2024 Noteholders' claims vis-à-vis Olinda under the
Existing 2024 Notes Guarantee and is in place until the Existing 2024 Notes Guarantee is fully restructured.
The holders cannot trade out of this position, and it will be cancelled upon Olinda's restructuring by Olinda's
accession to the New Indentures, which will reflect the holders' rights under the escrow positions.

> The Scheme Administrator and their respective advisers (legal, financial or
> otherwise) shall not incur any personal liability of any kind under, or by virtue of
> the restructuring of the Company's debts, this Scheme, or in relation to any related
> matter or claim, whether in contract, tort or restitution or by reference to any other
> remedy or right, in any jurisdiction or forum, save for in respect of fraud committed
> by them.

BVI Counsel Decl. Ex. J, BVI Scheme § 22.2.

76.    Estate fiduciaries and their functional equivalents regularly receive exculpations as

such orders are necessary to give decision-makers an appropriate measure of freedom to find

solutions in situations of extreme financial distress. *In re DBSD N. Am., Inc.*, 419 B.R. 179, 217

(Bankr. S.D.N.Y. 2009), *aff'd*, 427 B.R. 245 (S.D.N.Y 2010), *aff'd in part*, *rev'd in part*, 627 F.3d

496 (2d Cir. 2010) (explaining "[e]xculpation provisions are frequently included in chapter 11

plans, because stakeholders all too often blame others for failures to get the recoveries they desire;

seek vengeance against other parties; or simply wish to second guess the decisionmakers in the

chapter 11 case."); *In re Ocean Rig*, No. 17-10736 (MG) (Bankr. S.D.N.Y. Aug. 22, 2017) [ECF

Nos. 122, 153] (permanently enjoining litigation against the joint provisional liquidators of the

debtors and any of their respective successors, assigns, agents, representatives, officers, directors,

advisors or attorneys); *In re CGG S.A.*, No. 17-11636 (MG) (Bankr. S.D.N.Y. Dec. 21, 2017) [ECF

No. 25], at 9 (granting release to all parties for following the terms of the order except in the case

of the party's own gross negligence or willful misconduct).  The JPLs have fiduciary obligations

to Olinda's creditors and serve as officers of the BVI Court.  *Supra* ¶¶ 11, 27.  The requested

exculpations of the JPLs and their advisors are narrowly tailored to liability under or by virtue of

the BVI Scheme or restructuring of Olinda's debts.  BVI Counsel Decl. Ex. J, BVI Scheme § 22.1.

The exculpations are necessary and appropriate to prevent interference with the consummation of

the BVI Scheme, and in particular the issuance of the New 2024 Notes Guarantee because without

42

such exculpations the ability of the JPLs and their advisors to take action to effectuate the restructuring would be limited.[34]

77.     The Petitioner further requests that this Court exculpate Wilmington Trust, in its capacity as the indenture trustee of the Prior 2024 Notes, the Restructured 2024 Notes and as indenture trustee under the Prior 2024 Notes Indenture and the New Indentures; DTC in its capacity as record holder of the Prior 2024 Notes and the Restructured 2024 Notes; and Euroclear and Clearstream; and their respective successors, assigns, agents, representatives, officers, directors, advisors and attorneys from any liability for any action or inaction taken in furtherance of and/or in accordance with this chapter 15 case, the Proposed Order, the BVI Sanction Order, the BVI Proceeding, and the BVI Scheme, except for any liability arising from any action or inaction constituting gross negligence, fraud or willful misconduct as determined by this Court.

78.     Courts routinely exculpate indenture trustees and the DTC from liability in order to prevent interference with the issuance of new instruments.  *See e.g.*, *In re SPC* (Bankr. S.D.N.Y. Dec. 5, 2019) [ECF No. 192], at 14; *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 15, 2018) [ECF No. 277], at 9 (exculpating and releasing indenture trustees, record holders, custodians, exchange agents, tabulation and acceptance agents, administrative agents and settlement agents); *In re PT Bumi Res. TBK,* No. 17-10115 (MKV) (Bankr. S.D.N.Y. Mar. 17, 2017) [ECF No. 17], at 7 (same); *In re PT Berlian Laju Tanker TBK*, No. 13-10901 (SMB) (Bankr. S.D.N.Y. Jan. 8, 2015) [ECF No. 43], at 7 (same).  Such relief is necessary and appropriate here

---

[34]     To the extent that the Court considers that the requested non-debtor exculpations are not eligible for enforcement pursuant to section 1521, enforcing the exculpation provisions of the BVI Scheme under section 1507 is proper in the exercise of comity, having regard to the matters set forth above at paragraphs 62-67.  *In re Avanti*, 582 B.R. at 606 ("The issue in chapter 15 cases then is whether to recognize and enforce the foreign court order based on comity."); *Sino-Forest Corp.*, 501 B.R. at 661-62 (same); *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (citing *Salen Reefer*, 773 F.2d at 457) (the "key determination" in whether to grant comity to releases is whether the procedures used in the foreign jurisdiction meet American "fundamental standards of fairness.").

to ensure that the Prior 2024 Notes Guarantee and related security is properly cancelled, and the New 2024 Notes Guarantee and related security is duly issued.

## III.    RECOGNITION OF THE BVI PROCEEDINGS AND ENFORCEMENT OF THE BVI SCHEME OF ARRANGEMENT WOULD NOT BE MANIFESTLY CONTRARY TO U.S PUBLIC POLICY

79.    Section 1506 provides that a bankruptcy court may decline to grant relief requested if the action would be "manifestly contrary to the public policy of the United States." 11 U.S.C. §§ 1506, 1517(a). This public policy exception is "narrowly construed." *In re Sino-Forest Corp.*, 501 B.R. at 665; *In re Toft*, 453 B.R. 186, 195 (Bankr. S.D.N.Y. 2011) ("[T]hose courts that have considered the public policy exception codified in [section] 1506 have uniformly read it narrowly and applied it sparingly.").  The BVI Proceeding and BVI Scheme have provided for the orderly administration of the affairs of Olinda under the supervision of the BVI Court, consistent with the public policy of the United States embodied by the Bankruptcy Code.  *Supra* ¶¶ 6-9, 21-33. Recognition of the BVI Proceeding and enforcement of the BVI Scheme of advances the public policy objectives of sections 1501(a) and 1508.  The purpose of chapter 15, as noted in section 1501(a), is to facilitate cross-border insolvency cases, and section 1508 directs courts, in interpreting chapter 15, to consider its international origins.  11 U.S.C. §§ 1501(a), 1508. Recognition of the BVI Proceeding and enforcement of the BVI Scheme would facilitate not only the BVI-based restructuring of Olinda, but would ensure that the Brazil-based restructuring of the larger Constellation Group is not jeopardized.  Nothing has transpired in the course of the BVI Proceedings or arises under the BVI Acts that touches upon the policy concerns underlying section 1506 and thus the Court may grant the requested relief.

44

## NOTICE

80.     Notice of the Verified Petition has been provided to the parties (the "**Notice Parties**") set forth in Exhibit B annexed hereto (the "**Notice List**").  The Petitioner respectfully submits that no other or further notice is required.

## CONCLUSION

81.     WHEREFORE, the Petitioner respectfully requests that the Court grant the Verified Petition and enter the Proposed Order annexed hereto as Exhibit A (i) recognizing Olinda's BVI Proceeding as a foreign main proceeding or, alternatively, a foreign nonmain proceeding; (ii) recognizing the Petitioner as the "foreign representative" of the BVI Proceeding; (iii) granting full force and effect and comity to the BVI Scheme, and (iv) granting such other relief as the Court deems just and proper to facilitate the implementation of the BVI Scheme.

Dated:  March 6, 2020
New York, New York

Respectfully submitted,

WHITE & CASE LLP

By:      /s/*John K. Cunningham*
           John K. Cunningham

WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
John K. Cunningham
Thomas E. MacWright
Samuel P. Hershey

111 South Wacker Drive
Chicago, IL 60606
(312) 881 5400
Jason N. Zakia (*admitted pro hac vice*)

Southeast Financial Center, Suite 4900
200 S. Biscayne Boulevard
Miami, Florida 33131-2352
(305) 371-2700
Richard S. Kebrdle (*pro hac vice pending*)

*Attorneys for Eleanor Fisher, as Petitioner and Foreign
Representative*

## <u>VERIFICATION OF CHAPTER 15 PETITION</u>

Pursuant to 28 U.S.C. § 1746, I, Eleanor Fisher, declare as follows:

I am the authorized foreign representative of the Debtor with respect to the BVI Proceeding for purposes of this Chapter 15 Case. I declare under penalty of perjury that the factual contents of the foregoing Verified Petition, as well as the factual contents of each of the attachments and appendices thereto, are true and accurate to the best of my knowledge, information and belief, and I respectfully represent as follows:

- I have over 20 years of experience in both London and, since 2002, the Cayman Islands, the British Virgin Islands ("**BVI**") and Bermuda where I have led complex financial restructurings and the insolvencies of offshore companies. I am a fellow of the Institute of Chartered Accountants in England and Wales and a Cayman Islands qualified insolvency practitioner. I have a Bachelor of Science in international business and modern languages from Aston University.

- I have been involved in a number of court supervised matters (including official and provisional liquidations) since 2002. I acted as provisional liquidator of offshore drilling contractor Ocean Rig UDW Inc. and certain of its subsidiaries to oversee the successful restructuring of its debt obligations.

- On 19 December 2018 the BVI Commercial Court (the "**BVI Court**") appointed me to the position of provisional liquidator of Olinda Star Ltd. ("**Olinda**") in the provisional liquidation proceeding of Olinda pending before the BVI Court pursuant to section 170 of the BVI Insolvency Act, 2003 of the laws of the British Virgin Islands.

- On 20 December 2019, the BVI Court issued an order authorizing me to act as Olinda's foreign representative for the purposes of any proceedings commenced in the United States under chapter 15 of the U.S. Bankruptcy Code and elsewhere under the relevant local laws. As such, I have full authority to verify the foregoing Petition on behalf of Olinda and take related action.

47

Unless otherwise indicated, all facts set forth in this Verified Petition are based upon: (a) my review of relevant information, data and documents (including oral information) furnished to me by the Company and its legal advisors; (b) information supplied to me by the Debtor's officers, directors, employees, and professionals; or (c) my analyses of the information I have received on the Debtor's operations and financial condition.  I have also been kept abreast of major discussions with stakeholders, including the Debtor's primary financial creditors and its shareholders.  I am an individual over the age of 18.  If I am called to testify, I will do so competently and based on the facts set forth herein.

Dated: _____March 6___ , 2020

Respectfully submitted,

_____

*Eleanor Fisher*