UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re:                               :            **FOR PUBLICATION**

                                      :

                                      :            Chapter 15

      Olinda Star Ltd., (In Provisional Liquidation),   :            Case No. 20-10712 (MG)

                                      :

                    Debtor in a foreign proceeding.   :

------------------------------------------------------------------x

## MEMORANDUM OPINION GRANTING THE FOREIGN REPRESENTATIVE'S VERIFIED PETITION OF OLINDA STAR LTD FOR RECOGNITION OF BVI PROCEEDING AND MOTION REQUESTING ADDITIONAL RELIEF

*A P P E A R A N C E S :*

WHITE & CASE LLP
*Attorneys for Eleanor Fisher,*
*as Petitioner and Foreign Representative*
1221 Avenue of the Americas
New York, NY 10020
By:    John K. Cunningham, Esq.
        Thomas E. MacWright, Esq.
        Samuel P. Hershey, Esq.

200 South Biscayne Boulevard
Suite 4900
Miami, FL 33131
By:    Richard S. Kebrdle, Esq.

111 South Wacker Drive
Chicago, IL 60606
By:    Jason N. Zakia, Esq.

**MARTIN GLENN**
**United States Bankruptcy Judge**

        Pending before the Court is the Verified Petition of Eleanor Fisher (the "Petitioner" or

"Foreign Representative"), in her capacity as the duly-authorized foreign representative of

Olinda Star Ltd.'s ("Olinda" or "Debtor") provisional liquidation proceeding (the "BVI

Proceeding") pending in the BVI Commercial Court (the "BVI Court"), seeking entry of an

order:

(i)     granting recognition of the BVI Proceeding pursuant to section 1517 of title 11 of the
        United States Code (the "Bankruptcy Code") as the "foreign main proceeding" of the
        Debtor, and all relief included therewith as provided in section 1520 of the
        Bankruptcy Code;

(ii)    recognizing the Petitioner as the "foreign representative" of the BVI Proceeding;

(iii)   granting full force and effect and comity to the BVI Scheme (as defined below) and
        additional relief set forth pursuant to section 1521(a) or 1507(a) of the Bankruptcy
        Code; and

(iv)    granting such other and further relief as the Court deems just and proper.

("Verified Petition," ECF Doc. # 2 at 8; "Proposed Order," ECF Doc. # 2, Ex. A.)  In the

alternative, the Foreign Representative requests that the Court recognize the BVI Proceeding as a

foreign nonmain proceeding of the Debtor, and grant the discretionary relief requested pursuant

to sections 1521(a), 1507(a) and 105(a) of the Bankruptcy Code.  (Verified Petition at 8 n.4;

Proposed Order.)

        The Verified Petition is supported by the Declaration of Grant Carroll Pursuant to 28

U.S.C. § 1746 ("Carroll Declaration," ECF Doc. # 3) and the *Omnibus Motion of the Foreign*

*Representative for Entry of an Order (I) Approving the Withdrawal by the Foreign*

*Representative of the Verified Petition for Recognition of the Brazilian RJ Proceeding as to*

*Olinda Star Ltd. (In Provisional Liquidation) and Dismissal of its Chapter 15 Case, and (II)*

*Granting the Foreign Representative's Renewed Request for Recognition of the Brazilian RJ*

*Proceeding as to Arazi S.a.r.l. Pursuant to 11 U.S.C. §§ 1515, 1517, and 1520 and Giving Full*

*Force and Effect to the Brazilian Reorganization Plan as to Arazi S.a.r.l Pursuant to 11 U.S.C.*

*§§ 105(a), 1507(a), 1145, 1521(a) and 1525(a)* (the "Omnibus Motion," Case No. 18-13952

(MG), ECF Doc. # 197) pending before this Court in the related chapter 15 proceeding, *Serviços*

*de Petróleo Constellation S.A.*, *et al.*, Case No. 18-13952 (MG) (the "First Chapter 15

Proceeding").

The Court assumes familiarity with the facts in this case and refers to its previous opinion

in the First Chapter 15 Proceeding, *In re Serviços de Petróleo Constellation S.A., et al.*, 600 B.R.

237 (Bankr. S.D.N.Y. 2019) [hereinafter "*SPC Opinion*"], recounting the circumstances leading

to Olinda's restructuring in the BVI and the pending Verified Petition.  The foreign

representative in the First Chapter 15 Proceeding, Andrew Childe, sought this Court's

recognition of the joint judicial reorganization (*recuperação judicial* or "RJ") of certain entities

within the Constellation group of companies (the "Constellation Group")[1] in the jointly

administered judicial organization proceeding (the "Brazilian RJ Proceeding") pending in the 1st

Business Court of Rio de Janeiro (the "Brazilian RJ Court").  *SPC Opinion* at 243–44.  On the

same day that Olinda and certain of its affiliates filed as debtors in the Brazilian RJ Proceeding

and the First Chapter 15 Proceeding, Olinda commenced the BVI Proceeding pending in the BVI

Court.  (Verified Petition at 9.)

In June 2019, the Brazilian Court of Appeals upheld a decision to remove Olinda from

the Brazilian RJ Proceeding for lack of jurisdiction.  (Verified Petition at 10; *SPC Opinion* at

264.)  In the *SPC Opinion*, this Court granted recognition as a foreign nonmain proceeding to

Parent/Constellation and granted recognition as a foreign main proceeding for Petróleo

Constellation, Constellation Overseas, Alpha Star, Gold Star, Lone Star, Star International, and

Snover.  *SPC Opinion* at 246.  In light of Olinda's exclusion from the Brazilian RJ Proceeding,

---

[1]      The chapter 15 debtors in the First Chapter 15 Proceeding and their countries of incorporation include: (1)
Serviços de Petróleo Constellation S.A. (Brazil); (2) Lone Star Offshore Ltd. (BVI); (3) Gold Star Equities Ltd. (BVI);
(4) Olinda Star Ltd. (BVI); (5) Star International Drilling Limited (Cayman Islands); (6) Alpha Star Equities Ltd.
(BVI); (7) Snover International Inc. (BVI); (8) Arazi S.à.r.l. (Luxembourg); (9) Constellation Oil Services Holding
S.A. (Luxembourg); and (10) Constellation Overseas Ltd. (BVI).  *See SPC Opinion* at 246.

however, this Court found that because "[t]he Brazilian Court of Appeals determined that Olinda

Star should be removed from the Brazilian RJ Proceeding . . . discussion of this Chapter 15

Debtor's possible recognition is unnecessary." *Id.* at 264.

After this Court declined to grant recognition to Olinda in the First Chapter 15

Proceeding, Olinda's restructuring changed course. (Verified Petition at 10.) On August 5,

2019, Olinda, the joint provisional liquidators ("JPLs"), certain consenting 2024 Noteholders (as

defined below) and other parties to the Constellation Group's plan support agreement (the "PSA

Parties") dated June 28, 2019 entered into a term sheet (the "Olinda Term Sheet") governing a

parallel restructuring of Olinda's guarantee obligations in the BVI. (*Id.*) The Olinda Term Sheet

permitted the transactions contemplated by the RJ Plan to close without a restructuring of

Olinda, provided that Olinda's guarantee obligations were modified under BVI law in the BVI

Proceeding. (*Id.*)

As of December 18, 2019, the Constellation Group's approximately $1.5 billion of

prepetition debt has been substantially restructured pursuant to the RJ Plan. (*Id.*) On February

25, 2020, following a meeting of Olinda's scheme creditors (the "Scheme Meeting"), and upon

notice and a hearing, the BVI Court approved Olinda's BVI law scheme of arrangement (the

"BVI Scheme") pursuant to the BVI Business Companies Act, 2004, restructuring the existing

guarantee granted by Olinda (the "Prior 2024 Notes Guarantee") in favor of holders (the "2024

Noteholders") of certain 9.00% Cash /0.500% PIK senior secured notes due 2024 (the "Prior

2024 Notes") and allowing Olinda to accede as a guarantor of restructured 2024 Notes (the

"Restructured 2024 Notes") as contemplated under the RJ Plan. (Verified Petition 10–11.)

As set forth in the Verified Petition, aside from the relief requested in the Omnibus

Motion (which includes dismissal of Olinda in the First Chapter 15 Proceeding), only one step

4

remains in consummating the Constellation Group's global restructuring—granting comity to the Prior 2024 Notes Guarantee, which is governed by New York law.  (*Id.* at 11.)

For the reasons set forth below, the Court **GRANTS** the relief sought in the Foreign Representative's Verified Petition in this Memorandum Opinion.  The Court will issue a separate memorandum opinion and order addressing the relief requested by the foreign representative in the Omnibus Motion pending in the First Chapter 15 Proceeding, and approving (1) withdrawal by the foreign representative of the Verified Petition for recognition of the Brazilian RJ Proceeding as to Olinda and dismissal of Olinda's chapter 15 case and (2) granting the foreign representative's renewed request for recognition of the Brazilian RJ Proceeding and recognizing and enforcing the RJ Plan with respect to Arazi S.à.r.l.

## I.    BACKGROUND

Having set forth the context for the Pending Verified Petition, this Court discusses facts relevant for this Court's decision to grant the relief requested.

### A.    Location of Olinda's Registered Office and Records

On September 7, 2006, Olinda was incorporated in the BVI and registered as a Business Company under the laws of the BVI.  (Verified Petition ¶ 1; Carroll Declaration, ¶ 12 n.1, Ex. A.)  Olinda maintains its registered office at Tortola Pier Park, Building 1, Second Floor, Wickhams Cay 1, Road Town, Tortola VG1110 in the BVI.  (Verified Petition ¶ 1; Carroll Declaration, ¶ 12 n.3, Ex. A.)  Olinda's statutory books and records are held in Panama, together with the statutory books and records of certain Constellation Group entities.  (Carroll Declaration, ¶ 12 n.3.)  Olinda's membership interests are also located in the BVI.  (Verified Petition ¶ 1.)

### B.    Location of Olinda's Assets and Operations

Olinda is a special purpose vehicle that conducts its business principally on the high seas. (*Id.* ¶ 2.)  Its primary asset, the *Olinda Star* drilling rig, is presently completing a contract for a large international oil and gas company in the Indian Ocean.  (*Id.*)  Olinda also has a client trust account at White & Case LLP, in New York, with a balance of $1,000.67.  (*Id.*)

### C.    Olinda's Capital Structure and Location of its Creditors

Olinda is a guarantor and grantor of 2024 Notes, issued by its indirect parent company, Constellation Oil Services Holding S.A. ("Constellation Parent").  (*Id.* ¶ 3.)  As of February 6, 2020, the Foreign Representative came to understand that an aggregate principal amount of $608,455,375 was outstanding under the then-existing 2024 Notes (the "Prior 2024 Notes") pursuant to a New York law-governed indenture (the "Prior 2024 Notes Indenture").  (*Id.*)  The Prior 2024 Notes were restructured pursuant to the Brazilian RJ Plan, but the Prior 2024 Notes Guarantee remains in place until the BVI Scheme is consummated.  (*Id.*)  Petitioner represents that the indenture trustee of the Restructured 2024 Notes is located in New York and, upon information and belief, the participants comprise investment funds and individuals incorporated in various jurisdictions around the world.  (*Id.*)

To secure the Prior 2024 Notes, Olinda granted security over certain collateral, including a mortgage over its drilling rig, the *Olinda Star*.  (*Id.* ¶ 4.)  Olinda also granted an assignment of insurance policies and pledges on related accounts.  (*Id.*)  Certain Olinda affiliates were also guarantors and grantors in respect of the Prior 2024 Notes and are now guarantors and grantors in respect of the 2024 Restructured Notes.  (*Id.*)

### D.    Olinda's Management and Joint Provisional Liquidation in the BVI

Olinda's operational management team is based in Brazil, its treasury function is located in Panama, and its sole director resides in the Cayman Islands.  (*Id.* ¶ 5.)  For more than a year, however, the BVI court-appointed JPLs have actively overseen and implemented its restructuring in the BVI.  (*Id.*)

With respect to Olinda's restructuring in the BVI, there is no process or procedure in place under BVI law equivalent to chapter 11 of the Bankruptcy Code.  (*Id.* ¶ 7.)  The BVI has a common-law system.  (*Id.* ¶ 6.)  In the BVI, a company that requires protection of a stay order to present a compromise or arrangement to its creditors must seek the appointment of a provisional liquidator.  (*Id.* ¶ 7.)  Provisional liquidators are officers of the BVI Court and occupy a fiduciary position with respect to the company's assets and creditors.  (*Id.*)  The provisional liquidators represent the collective interests of the creditors of the company and protect its assets from undue dissipation.  (*Id.*)

Provisional liquidation is a BVI Court-originated and supervised process.  (*Id.* ¶ 9.)  The process begins when Debtors file an application with the BVI Court.  (*Id.*)  After an initial six-month period, an application must be made to the BVI Court every three months thereafter to extend the life of the "originating application" commencing the BVI Proceeding.  (*Id.*)  The BVI Court also requires that the provisional liquidators submit reports on the status of the proceeding every 60 days.  (*Id.*)  Provisional liquidators must get express court approval for certain action outside the scope of their appointment order, including the power to make a compromise or arrangement with creditors.  (*Id.*)

Olinda has engaged in a "soft-touch" provisional liquidation, with a view to implementing the successful reorganization of Olinda.  (*Id.* ¶ 12.)  In a "soft-touch" BVI

provisional liquidation the directors typically retain day-to-day control of the company, but the provisional liquidators are kept apprised of the actions taken by directors in the ordinary course of business. (*Id.* ¶ 8.) However, corporate authority to pursue a course of action that is outside the ordinary course of business (such as proposing entry into a scheme of arrangement to creditors) rests with the provisional liquidators. (*Id.*)

Under BVI law, at least one JPL of a company must be a BVI resident and hold a BVI insolvency practitioner's license. (Carroll Declaration ¶ 18.) However, a foreign insolvency practitioner meeting the requirements of the BVI Financial Services Commission may be appointed to a company jointly with one or more qualified insolvency practitioners who are resident in the BVI. (*Id.*) On December 7, 2018, Olinda filed an application for the appointment of JPLs. (*Id.* ¶ 19.) Following a hearing on December 13, 2018, the BVI Court issued an order appointing the Petitioner and Paul Pretlove, a qualified insolvency practitioner, as JPLs. (*Id.*, Ex. B.) Mr. Pretlove resides in the BVI and the Petitioner resides in the Cayman Islands. (Verified Petition ¶ 11.) They are both officers of the BVI Court and their authority to act on Olinda's behalf derives from the BVI's Court orders. (*Id.*) Due to the Insolvency Act's residency requirements, the Foreign Representative's ability to serve as a provisional liquidator of Olinda is contingent on the ongoing appointment of BVI-resident provisional liquidator, Mr. Pretlove, with whom she exercises joint and several authority, and is in regular contact. (*Id.*)

The core powers conferred on the JPLs by the BVI Court are to oversee the exercise of power of the sole director outside the ordinary course of business, and ultimately implement the restructuring. (*Id.*) More specifically, the JPLs have the authority to do all acts and execute, in the name of and on behalf of Olinda, all deeds, receipts and other documents, and for those purposes, use the company seal of Olinda when necessary. (Carroll Declaration ¶ 22.) The BVI

Court also requires the sole director to include the JPLs in his decision-making process and to meet with the JPLs on at least a weekly basis. (*Id.*)

The JPLs have conducted the BVI Proceeding pursuant to a BVI Court-approved Insolvency Protocol. (Verified Petition ¶ 14.) The Insolvency Protocol ensures the just, efficient, orderly and expeditious administration of the provisional liquidation. (*Id.*) It also facilitates communication between management and the JPLs to ensure that the JPLs receive adequate information to discharge their duties. (*Id.*) Pursuant to the BVI Insolvency Protocol, Olinda's sole director, management, and advisors provide regular information and updates to the JPLs and provide the JPLs with such information as is reasonably requested by the JPLs. (*Id.*) The JPLs are also entitled to receive and comment on drafts of written resolutions of Olinda, and to be included in any board meetings. (*Id.*) Since the JPLs were appointed in December 2018, they have actively exercised the authority conferred on them by the BVI Court. (*Id.* ¶ 15.)

On December 20, 2019, the BVI Court authorized Petitioner to act as foreign representative for proceedings commenced under chapter 15 of the Bankruptcy Code in the United States or elsewhere under local laws. (Verified Petition ¶ 13.)

### E.    Exclusion of Olinda from the RJ Proceeding and Corresponding Shift to BVI-Centered Restructuring

The JPLs supported Olinda's attempts to restructure through the Brazilian RJ Proceedings and a finding of COMI for Olinda in Brazil. (*Id.* ¶ 16.) After the Brazilian Court of Appeals decided to exclude Olinda from the Brazilian RJ Proceeding, the JPLs decided to restructure Olinda's Prior 2024 Notes Guarantee under a BVI plan or scheme of arrangement. (*Id.*) Brazilian counsel retained by Constellation Group advised Olinda to do the same. (*Id.*)

To efficiently restructure Olinda, the JPLs participated in negotiations with PSA Parties and their advisors to facilitate Olinda's restructuring in the BVI. (*Id.* ¶ 17.) The JPLs

9

considered, reviewed, and commented on the Olinda Term Sheet and BVI Scheme, and authorized Olinda to enter into the Olinda Term Sheet and put forward the BVI Scheme to its creditors. (*Id.*)

The Petitioner engaged with creditors in respect to the BVI Scheme, including by serving as a point of contact in the BVI for questions and overseeing the dissemination of scheme materials. (*Id.*) The Petitioner also caused Olinda to request the convening of the Scheme Meeting, chaired that meeting, and caused Olinda to seek approval of the BVI Scheme from the BVI Court. (*Id.*) These steps were not contemplated at the time of the JPL's initial appointment in December 2018, but were rather undertaken in connection with the shift to restructuring Olinda through a BVI-centered process. (*Id.*) Accordingly, the JPLs now support the restructuring of Olinda's Prior 2024 Notes Guarantee through the BVI Scheme, and further support a finding of COMI in BVI. (*Id.*)

### F.   Expectations of Olinda's Creditors and Their Support for the BVI Proceeding and BVI Scheme

The Verified Petition states that exchange offering documentation made clear that several entities within Constellation Group were incorporated in and subject to the laws of the BVI. (*Id.* ¶ 18.) Additionally, noteholders could have reasonably foreseen BVI proceedings affecting the Constellation Group's BVI-incorporated debtors. (*Id.* (citing *SPC Opinion* at 284).) After Olinda was excluded from the Brazilian RJ Proceeding, the ad hoc group of 2024 Noteholders that had entered into the plan support agreement (the "Consenting 2024 Noteholders"), along with the other PSA Parties conferred with Olinda and its affiliates about how best to restructure the 2024 Notes Guarantee in the BVI. (*Id.*)

On August 5, 2019, Olinda and certain PSA Parties, including 2024 Noteholders, entered into the Olinda Term Sheet, which provided for the restructuring of Olinda in the BVI. (*Id.* ¶

19.)  An offering memorandum issued on July 17, 2019 in connection with a rights offering for

certain of the Restructured 2024 Notes (the "Rights Offering Memorandum," ECF Doc. # 2-3)

confirmed that Olinda was subject to provisional liquidation in the BVI and intended to

restructure its guarantee in the BVI.  (Verified Petition ¶ 1; Rights Offering Memorandum at 5,

103 ("Olinda Star intends to restructure its indebtedness in a way that mirrors the RJ Proceedings

(to the extent possible) by way of a restructuring process that is permissible under BVI law.

Olinda Star remains in provisional liquidation and the joint provisional liquidators appointed on

December 19, 2018 by the BVI court remain in place.").)  Additionally, New Indentures (ECF

Doc. # 2-4) expressly include insolvency laws of the BVI in the definitions of bankruptcy laws.

(Verified Petition ¶ 19.)

Since mid-2019, the PSA Parties have been in regular contact with the JPLs and their

advisors regarding implementing the Olinda Term Sheet.  (*Id.* ¶ 20.)  The JPLs have prepared for

the meeting of Olinda's scheme creditors and responded to queries from those creditors in the

months leading to the meeting.  (*Id.*)  The Petitioner also served as a point of contact for creditor

inquiries and chaired the Scheme Meeting.  (*Id.*)

### G.    Overview of the Process by Which the BVI Scheme Was Approved by Creditors and Sanctioned by the BVI Court

BVI joint provisional liquidation proceedings are fair, equitable, and collective.  (Carroll

Declaration ¶ 28.)  They operate to preserve value for all creditors and stakeholders.  (*Id.*)

Moreover, in BVI joint provisional liquidation proceedings, all creditors receive ample notice

and opportunity to be heard by the BVI Court.  (*Id.* ¶ 30.)

Approval of a BVI scheme of arrangement commences when the debtor company,

through its directors, passes a resolution to enter into a scheme of arrangement with its creditors.

(Verified Petition ¶ 23.)  Where a company is in provisional liquidation, as here, the resolution

requires the prior approval of provisional liquidators. (*Id.*) In deciding whether to allow a scheme to proceed, the provisional liquidators consider whether the scheme secures a better return for the company's creditors than they would otherwise receive in a liquidation. (*Id.*) If satisfied, the provisional liquidators will authorize the company to begin the process of approving and implementing the scheme, subject to the provisional liquidators' oversight and ultimate control. (*Id.*)

On December 13, 2019, the JPLs, having concluded that entry into the BVI Scheme was in the interests of Olinda's creditors, authorized Olinda's sole director to pass the resolution necessary to commence the approval process for the BVI Scheme, and counter-signed that resolution. (*Id.* ¶ 24.) On that same date, Olinda, with authorization from the JPLs, applied to the BVI Court and requested that a Scheme Meeting be convened. (*Id.* ¶ 25.) On December 20, 2019, the BVI Court issued an order (the "Convening Order," ECF Doc. # 2-5) scheduling the Scheme Meeting for January 14, 2020. (Verified Petition ¶ 25.) The Convening Order also provided that creditors must receive copies of the notice convening the Scheme Meeting and the BVI Scheme at least 14 days before the Scheme Meeting. (*Id.*)

Pursuant to the Convening Order, advertisements of the Scheme Meeting were posted on Constellation Group's website and distributed to Olinda's scheme creditors. (*Id.* ¶ 26.) The Petitioner was appointed as chair at the Scheme Meeting, thereby extending the scope of the Petitioner's fiduciary duties to include oversight of the implementation of the BVI Scheme. (*Id.* ¶ 27.) On January 14, 2020, the Petitioner convened the Scheme Meeting and exercised her authority to adjourn the Scheme Meeting until February 6, 2020. (*Id.* ¶ 28.) The Petitioner ensured that notice of the adjournment, along with any documents to be considered at the adjourned Scheme Meeting, were made available through the Depository Trust Company and

Constellation Group's public website. (*Id.*) Creditors were informed that all voting and proxy forms that had already been provided would be retained and accepted at the adjourned Scheme Meeting, unless the JPLs were informed otherwise. (*Id.*)

For a scheme to be approved by the BVI Court, it must be approved by a majority in number representing 75% in value of the creditors or class of creditors or members or class of members present and voting either in person or by proxy at the meeting. (*Id.* ¶ 29.) On February 6, 2020, the Scheme Meeting was reconvened and 100% of the scheme creditors present or voting by proxy voted to approve the Scheme, representing 82.99% by value of the total debt subject to the BVI Scheme. (*Id.*)

Once the BVI Scheme was approved by creditors, the Petitioner sought BVI Court sanction of the BVI Scheme (the "Sanction Hearing"). (*Id.* ¶ 30.) On February 6, 2020, the Petitioner caused a notice of the Sanction Hearing to be served on all scheme creditors via the Depository Trust Company, notifying them that: (1) the BVI Scheme had been approved by the scheme creditors, (2) the Sanction Hearing would be held on February 25, 2020, and (3) "any interested party may appear at the Sanction Hearing." (*Id.*) Notice of the Sanction Hearing was also posted on Constellation Group's public website. (*Id.*)

At the Sanction Hearing, the BVI Court's role is not to assess the commercial benefits of the scheme. Nor, however, is BVI Court approval of a scheme of arrangement a "rubber stamp" exercise. (*Id.* ¶ 31.) Rather, at the Sanction Hearing, the applicant must demonstrate (usually through an affidavit of the Scheme Administrator) that (i) the relevant statutory requirements have been met; (ii) the classes of creditors were properly identified; (iii) each class was fairly represented by those attending the Scheme Meeting and the statutory majority was acting in the bona fide interests of the class; and (iv) it would be reasonable to approve the scheme. (*Id.*)

13

On February 25, 2020, the BVI Court held the Sanction Hearing.  (*Id.* ¶ 32.)  No scheme creditor or any party objected to the issuance of the Sanction Order.  (*Id.*)  Once the BVI Court sanctions a scheme of arrangement, the Scheme Administrator may then ensure that it is filed with the BVI Registrar.  (*Id.* ¶ 33.)  A scheme will become effective upon such filing.  (*Id.*)

### H.      The Objectives of Olinda's BVI Scheme

The purpose of Olinda's BVI Scheme is to restructure Olinda's guarantee obligations "so that they mirror the debtor restructuring of the RJ Debtors in the RJ Plan in an efficient and timely manner in order to secure a better return for [Olinda's] creditors than they would otherwise receive in a liquidation."  (*Id.* ¶ 34 (citing Carroll Declaration, Ex. J).)  Olinda is a guarantor and grantor pursuant to the Prior 2024 Notes Guarantee.  (*Id.* ¶ 34.)  Olinda's value derives from its long-term contract with a large Indian oil and gas company, not from the scrap value of the *Olinda Star* rig.  Accordingly, it is unlikely that Olinda's creditors (the holders of the Prior 2024 Notes) would recover more in a liquidation wherein the contract would be terminated and the rig sold, than through a restructuring of Olinda's debts.  (*Id.*)  Through a successful restructuring of Olinda, the rig will continue to operate and generate revenue, not only for the life of the existing contract but through subsequent contracts as well.  (*Id.*)  Furthermore, a failure to restructure the Prior 2024 Notes Guarantee would result in Olinda incurring a financial penalty in the form of additional interest on the Restructured 2024 Notes, which would impose a financial burden on the Constellation Group.  (*Id.*)  It is therefore not surprising that all creditors that voted on the Scheme voted in favor of Olinda's restructuring.

In essence, the BVI Scheme seeks to accomplish the following key objectives:

- release Olinda from the Prior 2024 Notes Guarantee and terminate all other obligations under the Prior 2024 Notes Indenture and the Prior 2024 Notes;

- allow Olinda to accede to the Participating 2024 Notes Indenture, the Stub 2024 Notes Indenture and the Non-Participating Notes Indenture in accordance with the terms set out therein and become a guarantor under the Restructured 2024 Notes pursuant to the terms of the guarantee set forth in each of the foregoing indentures (the "New 2024 Notes Guarantee");

- release all of the security over the assets granted by Olinda and over the shares of Olinda in relation to the Prior 2024 Notes;

- allow Olinda to grant new security over the assets and shares of the company in accordance with the Restructured 2024 Notes; and

- allow Olinda to guarantee the obligations of affiliate Constellation Overseas Ltd. under working capital and letter of credit facilities provided by Banco Bradesco S.A., secured by the same collateral as the Restructured 2024 Notes in accordance with the priorities set forth therein and pursuant to an intercreditor agreement between, among others, Constellation Overseas Ltd. and the indenture trustee of the Restructured 2024 Notes.

(*Id.* ¶ 35.)

Following the implementation of the BVI Scheme and the granting of the New 2024 Notes Guarantee, the former holders of the Prior 2024 Notes (Olinda's sole financial creditor constituency) will have received new notes on substantially the same terms as the Prior 2024 Notes, but with certain modifications, including an enhanced collateral package for the Participating 2024 Noteholders, more restrictive covenants on the Constellation Group and an increased interest rate. (*Id.* ¶ 36.) None of Olinda's other creditors are impacted by the BVI Scheme. (*Id.*)

## II.    DISCUSSION

### A.    Olinda Satisfies Section 109(a) and Venue is Proper in this District

Foreign debtors seeking relief under chapter 15 must satisfy the debtor eligibility requirements set forth in section 109(a) of the Bankruptcy Code. *See In re Ocean Rig UDW Inc.*, 570 B.R. 687, 698 (Bankr. S.D.N.Y. 2017) (citing *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247–51 (2d Cir. 2013)). Section 109(a) provides that "only

15

a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor" under the Bankruptcy Code.  11 U.S.C. § 109(a).  Courts in this Circuit have held that section 109(a) can be satisfied by bank accounts in the United States, including by an undrawn retainer.  *See, e.g.*, *In re U.S. Steel Can. Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017) ("Some courts, including this one, have held that an undrawn retainer in a United States bank account qualifies as property in satisfaction of section 109(a).").

This Court has previously held that a debtor's contract rights, including rights pursuant to debt that contains a New York governing law and forum selection clause, constitute intangible property of the debtor in New York for purposes of section 109(a).  *See, e.g.*, *SPC Opinion* at 268–69 (finding that the debtor's New York law-governed prepetition debt obligations and a per-entity $1,000 retainer in New York bank accounts satisfied section 109(a) of the Bankruptcy Code and venue requirements of section 1410(1) of title 28 of the United States Code).  Olinda has property in the United States.  The Prior 2024 Notes and Restructured 2024 Notes are governed by a New York law indenture, which contemplates New York as a venue for disputes. (Verified Petition ¶ 37.)  Olinda also owns a client trust account at White & Case LLP, in New York, with a balance of $1,000.67.  (*Id.* ¶ 2.)  Together, this property constitutes the principal U.S. assets of Olinda, in satisfaction of section 109(a).  Additionally, because of the location of these accounts, venue is proper pursuant to section 1410(1) of title 28 of the United States Code.

## B.    Olinda Satisfies the Recognition Requirements Contained in Section 1517

Section 1517(a) provides the remaining requirements for the recognition of a foreign proceeding under chapter 15.  *In re Ocean Rig UDW Inc.*, 570 B.R. at 698.  To grant recognition, the Court must first find that the BVI Proceeding constitutes either a main or nonmain proceeding with respect to Olinda.  *See SPC Opinion* at 270; *see also In re Bear Stearns High-*

*Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126–27 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("[T]he recognition must be coded as either main or nonmain."). Pursuant to section 1517, the Court must also find that the foreign representative applying for recognition is a person or body and the petition meets the requirements of section 1515. 11 U.S.C. § 1517(a); *see also SPC Opinion at 269*; *In re Ocean Rig UDW Inc.*, 570 B.R. at 698–99. Therefore, recognition of the foreign proceeding is statutorily mandated if the three requirements of section 1517(a) are met and no exception applies. *See In re Millard*, 501 B.R. 644, 651 (Bankr. S.D.N.Y. 2013).

For the reasons discussed below, the Court finds that the Foreign Representative satisfies each of the requirements of section 1517(a) and grants recognition to the BVI Proceeding as a foreign main proceeding.

### 1. The BVI Proceeding Is A Foreign Main Proceeding

Courts determine if a proceeding is main or nonmain using section 1502's definitions of each term. Section 1502 defines a "foreign main proceeding" as a "foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign nonmain proceeding is defined as a "foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an *establishment*." *Id.* § 1502(5) (emphasis added). Establishment is defined in chapter 15 as "any place of operations where the debtor carries out a nontransitory economic activity." *Id.* § 1502(2).

While the statute provides that a foreign main proceeding is one where the debtor has its COMI, the statute does not further define the term COMI. *See generally id.* §§ 1501–1532. "[E]very debtor has one and only one COMI." *SPC Opinion* at 276. The Second Circuit has made clear that COMI is determined as of the time of the chapter 15 filing, without regard to a

debtor's historical operational activity.  *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) (*Fairfield Sentry II*) ("[A] debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed.") "However, . . . to the extent that a debtor's COMI has shifted prior to filing its chapter 15 petition, courts may engage in a more holistic analysis to ensure that the debtor has not manipulated COMI in bad faith."  *In re Ocean Rig UDW Inc.*, 570 B.R. at 704.[2]

There is a rebuttable presumption that COMI is where the debtor has its "registered office" or "habitual residence."  *Id.* at 705; *see also* 11 U.S.C. § 1516(c) ("In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests.").  Courts have found that a debtor's registered jurisdiction is its COMI where no objection was raised or evidence presented rebutting the section 1516 presumption.  *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013).

Courts in this district have developed a list of non-exclusive factors that may be considered when determining COMI:

> [1] the location of the debtor's headquarters; [2] the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); [3] the location of the debtor's primary assets; [4] the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; [5] and/or the jurisdiction whose law would apply to most disputes.

---

[2]    The Court notes for purposes of this Memorandum Opinion that when the First Chapter 15 Proceeding was commenced on December 6, 2018, the JPLs supported Olinda's initial attempts to restructure through the Brazilian RJ Proceeding and further supported a finding of COMI in Brazil.  (Verified Petition ¶ 16.)  After Olinda was excluded from the RJ Proceeding, however, the JPLs' restructuring plan changed course through the BVI Scheme.  The Court therefore conducts its COMI analysis based on Olinda's restructuring activities on or around March 6, 2020 (the "Petition Date").

*SPC Opinion* at 273 (quoting *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).

"While each of these factors is a 'helpful guide' in determining a debtor's COMI, the factors are

not exclusive, and none of the factors is required nor dispositive." *In re Ocean Rig UDW Inc.*,

570 B.R. at 703.

Based upon the Court's findings of fact related to Olinda and the most relevant COMI

factors discussed below, the Court finds that, as of the Petition Date, Olinda's COMI was located

in BVI as a matter of law.

### a.   *Olinda's Registered Office and Place of Incorporation is BVI*

The Court finds that Olinda was incorporated in the BVI on September 7, 2006,

maintains its registered office in the BVI, and its membership interests are located in the BVI.

(Verified Petition ¶ 1.)  Here, no objection was raised and no evidence presented rebutting the

presumption that Olinda's registered office is its COMI.  Thus, the COMI presumption holds

with respect to Olinda.  *See SPC Opinion* at 293.

### b.   *The Location of Those Who Actually Manage Olinda Is BVI*

Nevertheless, the Court considers other factors supporting the conclusion that Olinda's

COMI is BVI.  With respect to the second factor, while Olinda's operational management team

is based in Brazil, its treasury function is based in Panama, and its sole director, Michael

Pearson, resides in the Cayman Islands, BVI-appointed JPLs have actively centralized Olinda's

restructuring in the BVI for over a year.  (Verified Petition ¶ 5.)

This Court finds persuasive Petitioner's argument that when determining the "location of

those who actually manage the debtor," courts may consider more than the location of the board

of directors of the debtor.  (Verified Petition ¶ 53 (citing *SPC Opinion* at 273 (holding that the

analysis of the location of management should be "flexible" and reflect the realities of a

19

particular business)).)  Courts may consider the activities of liquidators and provisional

liquidators in their analyses.  *See In re Ocean Rig UDW Inc.*, 570 B.R. at 706 (finding debtors'

COMI in the Cayman Islands to be "the site where their business [had been] run" by JPLs

pursuant to a protocol with the directors); *In re Fairfield Sentry Ltd.*, 10 Civ. 7311 (GBD), 2011

LEXIS 105770, at *20 (Sept. 16, 2011) (*Fairfield Sentry I*) (finding COMI in the BVI where

BVI liquidators had been "directing and coordinating" the debtor's affairs since their

appointment); *In re Betcorp Ltd.*, 400 B.R. 266, 292 (Bankr. D. Nev. 2009) (finding COMI in

Australia where "[t]he location of those that manage Betcorp—the liquidators" were located); *In

re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 418 (Bankr. S.D.N.Y. 2014) (finding COMI

in the Cayman Islands where joint provisional liquidators had "centralized the administration of

the Debtor's affairs and its restructuring in the Cayman Islands").  Thus, JPLs have a "profound

effect on the business of the debtor" because the debtor's traditional business may depend on the

restructuring process.  *See Suntech*, 520 B.R. at 417.

For over a year, Olinda has been in provisional liquidation and under the supervision of

the BVI Court and its Court-appointed provisional liquidators, the Petitioner and Mr. Paul

Pretlove.  (Verified Petition ¶ 10.)  The JPLs have been conducting the provisional liquidation of

Olinda in a "soft touch" manner, with a view to implementing a successful reorganization of

Olinda.  (*Id.* ¶ 12.)  They oversee the exercise of power of the sole director outside the ordinary

course of business, and ultimately implement the restructuring.  (*Id.*)  Pursuant to BVI Court

orders, the JPLs: (1) keep apprised of Olinda's general operations, (2) retain BVI counsel with

whom they regularly seek advice, (3) reviewed and commented on Olinda's draft board

resolutions, court filings and other documents concerning Olinda's restructuring, and (4)

supported various BVI Court applications.  (*Id.* ¶ 55.)

20

This Court finds that the JPLs also played a pivotal role in overseeing non-ordinary course transactions in connection with Olinda's BVI restructuring. They took steps necessary to ensure that the BVI Scheme was in the best interests of creditors and caused the BVI Scheme to be put forward to creditors and the BVI Court for approval. (*Id.* ¶ 56.) The JPLs oversaw the dissemination of notices and documents to scheme creditors and extensively engaged with creditors, responding to their questions and requests for information. (*Id.*) The Petitioner is also responsible, in her role as JPL and Scheme Administrator, with implementing the BVI Scheme. (*Id.*)[3] Mr. Pretlove has been involved in strategy discussions in respect of Olinda's provisional liquidation and has reviewed and commented on the JPLs' reports and filings with the BVI Court. (*Id.*) The efforts of the JPLs in Olinda's restructuring process in the BVI supports a finding that Olinda's COMI is in the BVI.

### c. The Location of Olinda's Primary Assets

The third factor, location of Olinda's assets and operations, is less clear because Olinda is a special purpose vehicle that conducts its business principally on the high seas. (*Id.* ¶ 2.) Olinda's primary asset, the *Olinda Star* drilling rig, is presently completing a contract for a large international oil and gas company in the Indian Ocean.

Despite its status as a special purpose vehicle, the Court can look to evidence that Olinda's business is run from the BVI by JPLs. *In re Ocean Rig UDW Inc.* is instructive in this regard. There, this Court found that although the nature of debtors' business and the mobility of their assets complicated the COMI analysis, the debtors "have engaged in various activities supporting their COMI in the Cayman Islands for almost a year." *In re Ocean Rig UDW Inc.*,

---

[3]    The Court notes that Petitioner is not a resident of the BVI, so her authority to act for Olinda emanates squarely from orders of the BVI Court and her ability to act is contingent upon the ongoing appointment of BVI-resident provisional liquidator, Mr. Pretlove. (*Id.*)

570 B.R. at 704.  For example, debtors incorporated in the Cayman Islands, hosted meetings with creditors and advisors relating to their restructuring in the Cayman Islands, and provided public notice and general recognition of relocation through UDW's Form 6–K report with the SEC, press releases and media reports.  *See id.*  In *In re Ocean Rig UDW Inc.*, the debtor was engaged in a "soft touch" provisional liquidation where the majority of the board of directors resided outside of the Cayman Islands, as is the case here since Michael Pearson, Olinda's sole director, resides in the Cayman Islands.[4]

As set forth above, Olinda has been incorporated in the BVI since 2006 and the JPLs hosted meetings with creditors relating to Olinda's restructuring in the BVI.  Olinda's sole director and the JPLs have managed the affairs of Olinda pursuant to the BVI Insolvency Protocol, which was approved by the BVI Court in the BVI Proceeding and is substantially similar to the protocol entered in *In re Ocean Rig UDW Inc*.  Because Olinda's "business is generally conducted outside of any jurisdiction in which it was managed," the BVI is the "site of [Olinda's] 'main interests]'—it is the site where their business is run."  *Id.* at 706.

> d. *The Location of the Majority of Olinda's Creditors or of a Majority of Creditors Who Would Be Affected by the Case Is Indeterminate*

With respect to the fourth factor, Olinda is a guarantor and grantor of the 2024 Notes. (Verified Petition ¶ 3.)  The indenture trustees of the 2024 Notes are located in New York and there is no evidence in the record regarding the location of the beneficial holders of the 2019 Notes and 2024 Notes.  (*Id.*)  This factor is neutral for purposes of the COMI analysis.

---

[4]    At oral argument, the Foreign Representative's counsel indicated that they were unable to find any case regarding a "soft-touch" provisional liquidation in the BVI.  This Court is not aware of such a case either, but it remains satisfied that the "soft-touch" provisional liquidation in the BVI meets a similar standard of fairness to the "soft-touch" liquidation procedures in the Cayman Islands.

*e.   The Jurisdiction Whose Law Would Apply to Most Disputes*

By virtue of being incorporated in the BVI, Olinda is subject to the BVI's laws,

regulations and jurisdiction, including with respect to corporate disputes.  *See SPC Opinion* at

287.  However, because of Olinda's operations on the high seas, it may be subject to other

regulatory regimes.  Nevertheless, this factor weighs in favor of a COMI in the BVI.

*f.   The Reasonable Expectation of Third Parties and Creditors*

Additionally, the Court may also consider the expectations of creditors and third parties

in determining COMI.  *See SPC Opinion* at 262; *Fairfield Sentry II*, 714 F.3d at 130 ("The

relevant principle . . . is that the COMI lies where the debtor conducts its regular business, so that

the place is ascertainable to third parties."); *In re British Am. Ins. Co*., 425 B.R. 884, 912 (Bankr.

S.D. Fla. 2010) ("The location of a debtor's COMI should be readily ascertainable by third

parties.").  Courts consider whether there is any "objective evidence that could provide interested

parties with notice that a debtor's COMI was in a particular jurisdiction other than the place of

its registered office."  *SPC Opinion* at 274.  For creditors, such evidence may include:

disclosures in offering memoranda and indentures.  *See id.* (citing *In re Oi Brasil Holdings

Cooperatief U.A.*, 578 B.R. 169, 228–32 (Bankr. S.D.N.Y. 2017) (reviewing offering

memorandum to establish noteholder expectations as part of a COMI analysis); *In re Suntech

Power Holdings Co., Ltd.*, 520 B.R. at 418 (considering terms of indenture to establish

expectations regarding likely location of a restructuring as part of a COMI analysis)).

Here, Olinda's scheme creditors understood Olinda's COMI to be in the BVI.  The

Verified Petition was filed over a year after the BVI Proceeding began, and the appointment of

JPLs had been advertised, putting those who had dealings with Olinda on notice to correspond

with the JPLs.  In addition, the Verified Petition provides that a majority of the 2024

Noteholders—Olinda's only scheme creditor constituency—had expressly required Olinda to centralize its restructuring in the BVI.  (Verified Petition ¶ 58.)

Disclosures in the debt documents for the Restructured 2024 Notes for which Olinda is a guarantor also provided creditors with objectively determinable evidence that Olinda's COMI was BVI.  An offering memorandum issued on July 17, 2019 in connection with a rights offering for certain of the Restructured 2024 Notes—*i.e.*, the Rights Offering Memorandum—confirmed that Olinda was subject to provisional liquidation in the BVI and intended to restructure its guarantee in the BVI.  (*Id.*; Rights Offering Memorandum at 5, 103 ("Olinda Star intends to restructure its indebtedness in a way that mirrors the RJ Proceedings (to the extent possible) by way of a restructuring process that is permissible under BVI law.  Olinda Star remains in provisional liquidation and the joint provisional liquidators appointed on December 19, 2018 by the BVI court remain in place.").)  Additionally, New Indentures (ECF Doc. # 2-4) expressly include insolvency laws of the BVI in the definitions of bankruptcy laws.  (Verified Petition ¶ 19.)  Thus, third party and creditors' expectations weigh in favor of finding that Olinda's COMI is the BVI.

### g.  Creditor Support

Finally, creditor support also supports a finding of COMI in the BVI.  *See SPhinX*, 351 B.R. at 117 ("Because their money is ultimately at stake, one generally should defer . . . to the creditors' acquiescence in or support of a proposed COMI . . . [for they] can . . . best determine how to maximize the efficiency of a . . . reorganization and, ultimately, the value of the debtor.").  Olinda's scheme creditors overwhelmingly support Olinda's BVI restructuring.  The BVI Scheme was approved by 100% of scheme creditors present and voting, and 82.99% of the scheme creditors by total value.  (Verified Petition ¶ 22.)  Moreover, the Consenting 2024

Noteholders funded $27 million of new money pursuant to the Rights Offering on the understanding that the Prior 2024 Notes Guarantee would be restructured in the BVI pursuant to the Olinda Term Sheet.  (*Id.* ¶ 13.)  No creditor has opposed recognition of the BVI Proceeding or the enforcement of the BVI Scheme.  (*Id.* ¶ 59.)

In addition to finding that Olinda's registered office is in the BVI, the Court finds that an analysis of the COMI factors also weighs in favor of a COMI in the BVI.  Accordingly, the Court holds that BVI Proceeding is recognized as a foreign main proceeding.

### 2.   The Foreign Representative Meets 1517(a)(2)'s Requirements

A chapter 15 case is properly commenced by the filing of a petition for recognition by a "foreign representative."  *See* 11 U.S.C. §§ 1504, 1515(a).  The Bankruptcy Code defines a "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).  This Court has previously found that offshore provisional liquidators qualify as "foreign representatives" within the meaning of section 101(24).  *See, e.g.*, *In re Ocean Rig UDW Inc.*, 570 B.R. at 701 (recognizing Cayman Islands JPLs as foreign representatives); *accord Fairfield Sentry I*, 2011 U.S. Dist. LEXIS 105770, at *8 (noting that it was undisputed that BVI provisional liquidators were foreign representatives).

The Petitioner is a "person" as defined under 11 U.S.C. § 101(41).  The Petitioner was appointed and is duly authorized and empowered by the BVI Court to: (1) administer the provisional liquidation of Olinda's assets and affairs, (2) implement the BVI Scheme in her capacity as JPL and scheme administrator, and (3) serve as foreign representative in this chapter 15 case.  (Verified Petition ¶ 47.)  The Petitioner is also an officer of the BVI Court.  (*Id.*)

Therefore, the Petitioner is a proper "foreign representative" within the meaning of section

101(24) of the Bankruptcy Code with respect to Olinda, and thus section 1517(a)(2) of the

Bankruptcy Code is satisfied.

### 3.    The Petition Meets the Additional Requirements of Section 1515

Olinda's chapter 15 case meets the additional requirements of section 1515 of the

Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).  The Verified Petition was filed pursuant to

section 1515(a) and includes all disclosures and documents required by sections 1515(b) and (c).

(*See* Carroll Declaration, Ex. B (attaching a certified copy of the decision commencing the BVI

Proceeding and appointing the Foreign Representative and a certificate from the BVI Proceeding

affirming the existence of the foreign proceeding, as required by section 1515(b)); Verified

Petition, Ex. 4 (attaching Petitioner's statement identifying all foreign proceedings with respect

to the debtor that are known to the foreign representative pursuant to section 1515(c)).)

### C.    Discretionary Relief Pursuant to Sections 1521, 1507, and 105 of the Bankruptcy Code

Pursuant to sections 1521 and 1507 of the Bankruptcy Code, the Petitioner requests that

this Court (1) grant full force and effect to the BVI Scheme within the territorial jurisdiction of

the United States; (2) issue a permanent injunction enjoining actions that would interfere with the

implementation of the BVI Scheme and BVI Sanction Order, (3) direct the Directed Parties[5] to

take any and all lawful actions that may be necessary to give effect to and implement the BVI

Scheme and (4) exculpate the JPLs (including, for the avoidance of doubt, the Petitioner as

---

[5]    Collectively, the Directed Parties are (i) Eleanor Fisher in her capacity as joint provisional liquidator of the Debtor and scheme administrator of the BVI Scheme; (ii) Paul Pretlove in his capacity as joint provisional liquidator of the Debtor; (iii) Wilmington Trust, National Association ("Wilmington Trust"), in its capacity as the indenture trustee of the Prior 2024 Notes, the Restructured 2024 Notes and as indenture trustee under the Prior 2024 Notes Indenture and the New Indentures; (iv) the Depository Trust Company ("DTC") in its capacity as record holder of the Prior 2024 Notes and the Restructured 2024 Notes; (iv) Euroclear Bank S.A./N.V. ("Euroclear") and Clearstream Banking, société anonyme ("Clearstream");and (vi) D.F. King & Co., Inc. in its capacity as information agent.

Scheme Administrator) and Directed Parties from liability on the terms set forth in the Proposed

Order.  (Verified Petition ¶ 64.)

Section 1521(a) outlines the discretionary relief a court may order upon recognition.  11

U.S.C. § 1521(a).  "The discretion that is granted is 'exceedingly broad,' since a court may grant

'any appropriate relief' that would further the purposes of chapter 15 and protect the Debtor's

assets and the interests of creditors," provided that the interests of creditors and other interested

entities are sufficiently protected.  *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y.

2009) (citing 11 U.S.C. §§ 1521(a), 1522(a)).  In *In re Atlas Shipping A/S*, this Court described

"sufficient protection" as embodying three basic principles: "the just treatment of all holders of

claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and

inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of

proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S.

law."  404 B.R. at 740 (citing *In re Artimm S.r.l.*, 335 B.R. 149, 160 (C.D. Cal. 2005) (analyzing

under § 304(c) of the old Code but noting that analysis would be "essentially the same" under

§ 1521(b) of the current Code)).

In addition to section 1521's provisions regarding "any appropriate relief," section

1507(b) provides that a court:

> [i]n determining whether to provide additional assistance . . . shall consider
> whether such additional assistance, consistent with the principles of comity,
> will reasonably assure—(1) just treatment of all holders of claims against
> or interests in the debtor's property; (2) protection of claim holders in the
> United States against prejudice and inconvenience in the processing of
> claims in such foreign proceeding; (3) prevention of preferential or
> fraudulent dispositions of property of the debtor; (4) distribution of
> proceeds of the debtor's property substantially in accordance with the order
> prescribed by this title; and (5) if appropriate, the provision of an
> opportunity for a fresh start for the individual that such foreign proceeding
> concerns.

11 U.S.C. § 1507(b). "Pursuant to section 1507, the court is authorized to grant any 'additional

assistance' available under the Bankruptcy Code or under 'other laws of the United States,'

provided that such assistance is consistent with the principles of comity and satisfies the fairness

considerations set forth in section 1507(b)." *In re Agrokor d.d.*, 591 B.R. 163, 188–89 (Bankr.

S.D.N.Y. 2018) (quoting *In re Rede Energia S.A.*, 515 B.R. 69, 90 (Bankr. S.D.N.Y. 2014)). "As

with section 1521, relief under section 1507 may include recognition and enforcement of a plan

approved by a foreign court." *Id.* (citing *In re Rede Energia S.A.*, 515 B.R. at 94–95).

This Court has indicated on several occasions that "[t]he interplay between the relief

available under sections 1507 and 1521 is far from clear." *In re Avanti Comm'cns Grp. PLC*,

582 B.R. 603, 615–16 (Bankr. S.D.N.Y. 2018). The Fifth Circuit in *Ad Hoc Grp. of Vitro

Noteholders v. Vitro SAB De CV (In re Vitro S.A.B. de CV)*, held that courts must

> first consider the specific relief enumerated under § 1521(a) and (b). If the
> relief is not explicitly provided for there, a court should then consider . . . §
> 1521's grant of any appropriate relief . . . [which is] relief previously
> available under Chapter 15's predecessor, § 304. Only if a court determines
> that the requested relief was not formerly available under § 304 should a
> court consider whether relief would be appropriate as "additional
> assistance" under § 1507.

701 F.3d 1031, 1054 (5th Cir. 2012).

The Court concludes that Petitioner's request for discretionary relief comports with

sections 1521 and 1507 for the reasons set forth below.

### 1. Enforcement of the BVI Scheme

"[T]he principal question in determining whether to recognize and enforce the [BVI

Scheme] under Chapter 15 ultimately boils down to a question of the appropriateness of granting

comity to the foreign court approval of the [BVI Scheme]." *In re Agrokor d.d.*, 591 B.R. at 189.

Pursuant to section 1521, bankruptcy courts have "authority to enforce reorganization plans

approved in foreign proceedings." *See* 8 COLLIER ON BANKRUPTCY ¶ 1521.02 (16th ed. 2019).

In *Avanti*, this Court recognized and enforced a scheme of arrangement that was approved by creditors and the High Court of England and Wales. *See* 582 B.R. 617–19. The Court upheld the scheme of arrangement, noting that "Avanti's Scheme Creditors had a full and fair opportunity to vote on, and be heard in connection with, the Scheme. . . . The proceedings under UK law in the UK courts afford creditors a full and fair opportunity to be heard in a manner consistent with US due process standards." *Id.* at 618.

The Court finds persuasive the Foreign Representative's argument that recognizing the BVI Scheme and the BVI Sanction Order is necessary and appropriate pursuant to section 1521 of the Bankruptcy Code. (Verified Petition ¶¶ 68–69.) This Court agrees that the United States and BVI share common-law traditions and fundamental principles of law, including an emphasis on procedural fairness. (*Id.* ¶ 69.) Scheme creditors received notice of Olinda's provisional liquidation proceedings and entry into the BVI Scheme. (*Id.*) Creditors had a full and fair opportunity to vote and be heard in connection with the BVI Scheme, consistent with U.S. due process standards. Moreover, the BVI Court has approved the BVI Scheme, issuing the Sanction Order after notice and a hearing. The matters considered by the BVI Court reflect the foreign court's similar sensitivity to issues of due process and just treatment of creditors considered by U.S. bankruptcy courts when approving reorganization plans.

### 2. *Issuance of a Permanent Injunction*

The Court also agrees that the issuance of a permanent injunction against acts that would interfere with the BVI Scheme and BVI Sanction Order is also appropriates under section 1521. Pursuant to section 1521(e), this Court must apply the "standards, procedures and limitations applicable to an injunction" in chapter 15 cases with respect to relief requested under sections 1521(a)(1), (2), (3) and (6). 11 U.S.C. § 1521(e). This Court has granted permanent injunctions

29

in several cases to support proper implementation of a scheme of arrangement.  *See, e.g.*, *In re Avanti*, Case No. 18-10458 (MG), ECF Doc. # 7 (Bankr. S.D.N.Y. Apr. 6, 2018); *In re Ocean Rig*, No. 17-10736 (MG), ECF Doc. # 153 (Bankr. S.D.N.Y. Sept. 20, 2017).

This Court finds persuasive that there is a threat of irreparable harm without an injunction because one or more persons or entities could take action that is inconsistent with or in contravention of the terms of the BVI Scheme, including seeking to enforce the accelerated Prior 2024 Notes Guarantee against Olinda in New York, jeopardizing Olinda's contracts and resources.  (Verified Petition ¶ 72.)

### 3.  Directing the Directed Parties to Take Required Action Under the BVI Scheme

The Petitioner's request for the Court's assistance in directing the Directed Parties to carry out all actions required by the BVI Scheme is also consistent with section 1521(a).  As this Court stated in *In re Invesora Electrica de Buenos Aires S.A.*, such relief "will give a clear direction and authority under United State[s] law to the [Directed Parties] to carry out the requirements of the [BVI Scheme]" and will therefore benefit Olinda and its estate.  560 B.R. 650, 657 (Bankr. S.D.N.Y. 2016).

### 4.  Exculpation of the JPLs and Directed Parties

Exculpating the JPLs and Directed Parties is also appropriate under the circumstances and consistent with relief granted in other chapter 15 cases.  *See In re Oi S.A.*, 587 B.R. 253, 269 n.3 (Bankr. S.D.N.Y. 2018); *In re Ocean Rig UDW Inc.*, No. 17-10736 (MG), ECF Doc. ## 122, 153 (Bankr. S.D.N.Y. Aug. 22, 2017).  This Court agrees that such relief is necessary and appropriate to prevent interference with the consummation of the BVI Scheme, and issuance of the New 2024 Notes Guarantee because without such exculpations the ability of the JPLs and

their advisors to take action to effectuate the restructuring would be limited.  (Verified Petition ¶ 76.)

Finally, the Court finds that the requested relief is not manifestly contrary to public policy of the United States pursuant to section 1506.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, this Court **GRANTS** the Foreign Representative's request for the relief sought in the Verified Petition.

**IT IS SO ORDERED.**

Dated:    April 3, 2020
          New York, New York

                              *Martin Glenn*
                              MARTIN GLENN
                     United States Bankruptcy Judge